MARTIN G. HANNIGAN *v.* ITALO PETROLEUM CORPORATION OF AMERICA, a corporation of the State of Delaware.

(*March* 22, 1935.)

HARRINGTON, RICHARDS and REINHARDT, J. J., sitting.

*C. Stewart Lynch* (of Biggs, Biggs and Lynch) for plaintiff.

*Ivan Culbertson* (of the office of Hugh M. Morris) for defendant.

Superior Court for New Castle County, Action of *Assumpsit* on two promissory notes executed by the defendant, No. 105, January Term, 1935.

HARRINGTON, J., delivering the opinion of the Court:

This case is before us on a demurrer to the fifth plea to the plaintiff's declaration. That plea, in substance, alleges:

1. That Shingle, who was described as Syndicate Manager, the original payee in the notes sued, on, merely held them in a representative capacity and had no real interest in, or title to such notes.

2. That before this action was brought, the parties interested in their proceeds had assigned all of their titles and interests in the notes to one Byers, who had no other rights or interests in them.

3. That, in consideration of that assignment, Byers agreed to bring suit on the notes, to pay the expenses of the suit, and, if he recovered on them, to pay 25% of the amount so recovered to his assignors, the persons originally entitled to their proceeds; the remaining 75% was to be retained by him, and out of which he was to pay the necessary counsel fees incident to the suit.

4. That the assignment to Byers on such terms was contrary to the intent of the statute in that behalf, but that, pursuant to that unlawful agreement, Byers had, nevertheless, caused this action to be brought (necessarily meaning by Hannigan, the plaintiff).

All of these facts are admitted by the demurrer. *Shipman's Com. Law. Pl.* 264.

The declaration alleges the endorsement of the notes sued on, without recourse, by Shingle, Syndicate Manager, the payee named in them on the day of their date, and their subsequent assignment and transfer to Hannigan, the plaintiff, on September 19, 1934; and the question is whether the plea above referred to sets up a good defense to the plaintiff's action, because it appears from it that such action is based on a champertous agreement.

In England, in the early days of the common law, a champertous "bargain was an offense," because such bargains when made with men of wealth and power tended to affect the due course of justice. They, also, tended to encourage litigation and were, therefore, highly injurious to the peace of society. For these reasons they were void on grounds of public policy. *Bayard v. McLane,* 3 *Harr.* 139, 208, 212. See, also, *Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589; *The Clara A. McIntyre* (*D. C.*), 94 *F.* 552; *Thurston v. Percival,* 1 *Pick.* (*Mass.*) 415; 4 *Black. Com.* 135.

In the year 1742 (15 *Geo. II*) our colonial legislature passed an Act which provided

"That if any person within this government  *  *  *  shall be guilty of maintenance, champerty, or embracery, every such person so offending shall be proceeded against as by the common law and the several statutes made against such offenses in  *  *  *  England is provided and directed." 1 *Del. Laws* 239.

*Section* 4778 of the *Revised Code of* 1915, the statute now in force, also, provides:

"Whoever shall be guilty of  *  *  *  maintenance, or champerty, shall be deemed guilty of a misdemeanor.  *  *  *"

█ The making of a champertous agreement is, therefore, a criminal offense in this state, and has been since the year 1742. *Bayard v. McLane,* 3 *Harr.* 139; *Revised Code* 1829, 138; *Revised Code* 1852; *Chap.* 130, § 2; *Revised Code* 1852, as amended in 1874, *Chap.* 130, § 2. Such being by statute the clearly defined policy of this state toward champertous agreements, our courts have held that agreements of that character are necessarily absolutely void, though not made so by the express terms of the statute. *Bayard v. McLane* (*Ct. of Err. & App.*), 3 *Harr.* 139; *Gibson v. Gillespie, et al.,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589. In fact, the same general principle applied in these cases was, also, applied in *Strout Co. v. Howell,* 4 *Boyce* (27 *Del.*) 31,

85 *A.* 666, and in *Cook v. Pierce,* 2 *Houst.* 499, and *Gregory & Co. v. Bailey's Adm'r,* 4 *Harr.* 256, does not lay down any inconsistent rule.

In view of these cases in our own state, it is unnecessary for us to consider *Guffey-Gillespie Oil Co. v. Wright (C. C. A.),* 281 *F.* 787, and *Adams Express Co. v. Darden (C. C. A.),* 286 *F.* 61, and other cases cited by the plaintiff.

It is true that neither of the statutes above quoted define the precise meaning of the word "champerty."

The opinion of the Court in *Bayard v. McLane,* 3 *Harr.* 139, *supra,* however, contains an exhaustive discussion of the law on that subject, and, to a lesser degree, of the law of maintenance, which is closely connected with it. Without entering into a detailed discussion on the question, it is apparent from that case that even as early as 1742, and to an even greater degree by 1776, when we became a State, the ancient common law rules prohibiting the assignments of choses in action, which rules were, at least, auxiliary to and closely connected with the law of champerty, had been materially changed by judicial decision in England. It is, also, apparent that certainly as early as 1736 substantially the same changes had been made by statute by the Colonial Assembly in what is now this State (Act "for assigning bills and specialties," 1 *Del. Laws,* 17). That strictly speaking the ancient common law rules relating to champerty were never applied in this state is, therefore, apparent. *Bayard v. McLane,* 3 *Harr.* 139, *supra.* The Court in that case did not mean, however, that there was then no law, whatever, in England against the making of champertous contracts to which we could refer to define the meaning of that term as used in our statute of 1742 and in the subsequent legislative acts based thereon. In fact, quoting from no less an authority than Sir Edward Coke, Judge Harrington, speaking for the Court, said that the *Statute of Westminster I* was the real "foundation of all the acts and book cases"

on the law of champerty in England that followed it, and that the meaning of that term could be ascertained by referring to those acts. The legislative acts subsequent to *Westminster I*, referred to by the Court, were 3 *Edw. I*, 28 *Edw. I, Chap.* 11, and, particularly, 33 *Edw. I,* enacted in the year 1305. There are cases in both England and America that say that these statutes were substantially declaratory of the common law rules then applying to champerty in England and did little more than increase the old penalties applicable to that offense. *Johnson v. Van Wyck,* 4 *App. D. C.* 294, 41 *L. R. A.* 520; *Thurston v. Percival,* 1 *Pick. (Mass.)* 415; 11 *C. J.* 235.

However that may be, the statute of 33 *Edw. I* contained the following language:

> "Champertors be they that move pleas and suits, or cause to be moved, either by their own procurement or by others, and sue them at their proper costs for to have party of the land in variance or part of the gains." See *Bayard v. McLane*, 3 *Harr.* 139, 210, 211.

Quoting from *Hamilton v. Gray,* 67 *Vt.* 223, 31 *A.* 315, 48 *Am. St. Rep.* 811, this Court in *Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589, 593, *supra,* said:

> "Champerty is an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense."

But though champerty is one species of maintenance, and, notwithstanding the broad language used in 33 *Edw. I,* if the person agreeing to prosecute a suit on the above terms had any legal or equitable interest in the subject matter, other than by the terms of the agreement under which the suit was brought, he was not a mere volunteer but an interested party, and was, therefore, not guilty of making a champertous agreement. *Bayard v. McLane,* 3 *Harr.* 139, 213, *supra; Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*)

331, 152 *A.* 589, *supra; Thallhimer v. Brinckeroff,* 3 *Cow.* (*N. Y.*) 623, 15 *Am. Dec.* 308; 11 *C. J.* 250, 253.

Because of the rule prohibiting the assignment of rights of action the conveyance of land, held adversely by another, was prohibited at common law. *Bayard v. McLane,* 3 *Harr.* 139; 11 *C. J.* 254. And the *Statute of Henry 8th, Chap.* 9, was merely declaratory of the old rule. *Chalmondeley v. Clinton,* 4 *Eng. Repr.* 721; 4 *Kent's Com.* 447; 11 *C. J.* 254. It is true that that rule was closely akin to the law of champerty and maintenance. It is, also, true, as is pointed out by the plaintiff, that it was repudiated in this state by this Court in *Doe v. Stephens,* 1 *Houst.* 31; but that ruling is in no way inconsistent with *Bayard v. McLane,* 3 *Harr.* 139, *supra,* or with the existence in this state of a modified rule as to the law of champerty.

It must be conceded that practically none of the ancient reasons for the law against the making of champertous contracts exist in modern times. That was practically admitted by the Court in *Bayard v. McLane,* 3 *Harr.* 139, in quoting from *Thallhimer v. Brinckeroff,* 3 *Cow.* (*N. Y.*) 623, 643, 15 *Am. Dec.* 308, but, apparently, largely because of our statute, the rule herein above referred to was laid down by that court, and as we have already seen was affirmed many years later by this Court in *Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589.

It nowhere appears that Byers had any interest in the notes sued on, other than under the contract and assignment pursuant thereto, referred to in the plea. Considering the terms under which he acquired them, that his interest in such notes was assigned by him by a champertous and void agreement is, therefore, apparent. *Bayard v. McLane,* 3 *Harr.* 139; *Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589.

Where a champertous agreement is the very basis of the plaintiff's claim, and not merely collateral to it, it

logically follows that he cannot recover on that claim. *Burnes v. Scott,* 117 *U. S.* 582, 589, 6 *S. Ct.* 865, 29 *L. Ed.* 991; *Hilton v. Woods, L. R.* 4 *Eq.* 432; *The Clara A. McIntyre* (*D. C.*), 94 *F.* 552; 11 *C. J.* 271. This principle was recognized in *Gibson v. Gillespie,* 4 *W. W. Harr.* (34 *Del.*) 331, 152 *A.* 589, but it is not applicable here.

The plea alleges that Shingle, the original payee in the notes sued on, did not have the beneficial interest in them, but he certainly had the legal title and that title was apparently assigned to Hannigan, the plaintiff. Hannigan's right to sue would, therefore, seem to be apparent, unless he is acting in all respects as the agent and nominee of Byers. It is alleged that Byers, by agreement with the real beneficial owners of the notes sued on, was to share in the amounts recovered on them; was to pay the expenses of the suit and that this suit was brought by Hannigan, the plaintiff, pursuant to that agreement. It is not specifically alleged, however, that Hannigan was a party to the Byers agreement or that he was the mere agent of Byers and acting for him. Every inference as to the meaning of the facts alleged is necessarily against the pleader; and, applying that rule, it does not clearly appear that the champertous agreement of Byers was the very basis of the plaintiff's claim.

The demurrer is, therefore, sustained.