ORVILLE G. DRAKE,
Plaintiff,

*vs.*

NORTHWEST NATURAL GAS COMPANY, a dissolved corporation of the State of Delaware,
Defendant.

*New Castle, November 2, 1960.*

*Louis L. Redding* and *Leonard Williams,* Wilmington, for claimant, Harry Hausknecht.

*William Prickett, Jr.,* Wilmington, receiver, pro se.

*Arthur G. Logan,* of Logan, Marvel, Duffy & Boggs, Wilmington, for exceptants, A. Faison Dixon, H. Harper McKee, Albert C. Brokaw and Arthur G. Logan.

MARVEL, Vice Chancellor: On January 15, 1959, plaintiff as a stockholder and creditor of Northwest Natural Gas Company, a dissolved corporation, filed his complaint in which he prayed for the appointment of a receiver of such corporation pursuant to the provisions of § 279 of *Title* 8 *Del.C.* On the same date the corporation by answer admitted the allegations of the complaint and William Prickett, Jr. was named receiver.

The receiver having filed an inventory, list of debtors and creditors and otherwise complied with the terms of *Rule* 151, *Del.C.Ann.,* thereupon gave notice to creditors to file their claims. Thereafter claims and exceptions thereto having been filed, a hearing was held on the claim of one Harry Hausknecht based on promissory notes of the defendant corporation in the total amount of $209,626.65 plus interest. This is the opinion of the Court on the validity of such claim.

The notes [1] on which the Hausknecht claim is based are in varying amounts and bear dates running from the year 1948 through 1954.

1. Each note here in issue contained the following provision. "Payment shall be made out of the proceeds of the first public financing completed by the undersigned; or upon the liquidation of this company whichever occurs earlier. In the event of liquidation, the then remaining assets of the company will be distributed pro rata to noteholders."

They are part of a series of notes totalling $814,043.30 issued to finance Northwest's abortive effort to export natural gas from Canada. On December 22, 1954, the holders of a number of such notes having put them up for sale at public auction, those in litigation were purchased by the claimant, Hausknecht, for the sum of $315 at an auction conducted at 103 Park Avenue, New York, New York by Adrian H. Muller & Son. The successful bidder for such notes had no advance knowledge of the affairs of Northwest Natural Gas Company having appeared at the sale in response to notice published in the Journal of Commerce and Commercial on December 17, 1954. Having bid successfully on the notes in issue, pre-dated assignments along with the notes themselves were delivered to claimant and are attached to the claim.

Mr. Hausknecht testified that he has what he calls an investment hobby of attending auction sales of securities usually during December at which he makes purchases of stock certificates, bonds and notes of doubtful value put up for sale for the obvious purpose of establishing capital losses. Claimant further testified that he has followed this so-called penchant at public auctions since 1951 and that until suit was brought in New York in 1958 on the notes here in issue he had never brought suit on any certificate of stock, bond or note purchased by him on such occasions.

Claimant admittedly is an attorney duly licensed to practice law in the State of New York having been admitted to practice in 1926, and exception was taken to his claim on the grounds *inter alia* that inasmuch as claimant purchased such notes and brought suit on them he committed an offense against the public policy of the State of New York as expressed in *Penal Law*, § 274, *Article 24, c. 40, Consolidated Laws of New York*. This section provides *inter alia* that an attorney shall not buy a bond, promissory note, bill of exchange or other chose in action "* * * with the intent and for the purpose of bringing an action thereon."

Claimant, according to his affidavit, made the purchases in question on or about December 22, 1954, and shortly thereafter turned them over to his brother-in-law, David L. Weissmann, an attorney.

On January 18, 1955, Mr. Weissmann wrote to the corporation as follows:

"A client of mine has acquired and now owns notes made by you in the sum of about $209,000 to Morgan, Stanley & Co.

"I am under instructions to proceed to enforce payment of the said notes. Before doing so, I should be pleased to sit down to discuss the matter with you at our mutual convenience."

Exceptants contend that such letter clearly establishes claimant's intent and purpose at the time of his purchase to have been to bring suit on such notes in violation of New York law, and such purchase being thus invalid in that state may not be enforced here. Claimant, while seriously questioning the extraterritorial effect of the New York statute, *Roe v. Jerome*, 18 *Conn.* 138; 15 *C.J.S. Conflict of Laws* § 4d, *Penal Law*, p. 856; and 21 *C.J.S. Courts* § 70, p. 109 et seq., contends that in any event such purchase did not violate the New York law, nor did it violate any provision or principle of the law of Delaware.

■ Champerty, a species of maintenance, has never been expressly defined by the Delaware Legislature [2] but has been recognized as an offense in this state since colonial times, see § 2 of *Chap*. 91, *Vol*. 1, *Laws of Delaware*, although conversely an earlier act, *Chap*. 49, *Vol*. 1, *Laws of Delaware*, permitted the assignment of bills and specialities "* * * for the encouragement of trade and commerce * * *" The result was, as pointed out by then Judge Harrington in *Hannigan v. Italo Petroleum Corporation*, 6 *W.W.Harr*. 442, 443, 178 *A*. 589, that the concept of common law champerty was never adopted *in toto* in Delaware, our courts having consistently declined to condemn as champertous, assignments in which the assignee had any legal or equitable interest in the subject matter other than by the terms of the agreement under which the suit was brought, *Bayard v. McLane*, 3 *Harr*. 139; *Gibson v. Gillespie*, 4 *W.W.Harr*. 331, 152 *A*. 589. Thus the broad common law rule against bargains for bringing

2. § 2 of *Chap*. 91, *Vol*. 1, *Laws of Delaware* did define a common barrator as one "* * * vexing others with unjust and vexatious suits, or shall promote or encourage others so to do * * *"

suits made "* * * with men of wealth and powers * * *" (arrangements which were deemed to affect adversely the course of justice by encouraging and stirring up litigation) never was a part of the law of Delaware, and it is the mere volunteer who takes a claim for the purpose of collecting and dividing the proceeds with its owner, if they prevail, who is condemned as a champertor in Delaware, *Gibson v. Gillespie, supra.* Here no such charge is made and the evidence clearly demonstrates that claimant is the bona fide owner of the claim in litigation. Accordingly, the offense of champerty as defined in the Delaware cases has not been committed, and the Hausknecht claim against the present receivership fund is not tainted with champerty as such doctrines applies in Delaware.

Did claimant, however, violate the New York statute, and if so, as a matter of conflict of laws may claimant therefore be denied the right to recover on such notes in this jurisdiction, *Restatement of the Law, Conflict of Laws,* § 350?

In my opinion, it is unnecessary to decide this latter question which would involve, of course, a determination of the extraterritorial effect, if any, of the New York statute, *Roe v. Jerome, supra,* because I am satisfied that claimant in making the purchase here under attack did not violate the New York statute.

I have no doubt but that such statute was enacted for the purpose of controlling a form of common law champerty, namely the "stirring up" of litigation by attorneys through the purchase of choses in action for the very purpose of suing thereon and collecting costs, *Baldwin v. Latson,* 2 *Barb.Ch.* 306; *Moses v. McDivitt,* 88 *N.Y.* 62, but that suits on choses in action purchased by attorneys were not thereby generally banned. In other words, the public policy of New York does not condemn the purchase of choses in action by attorneys or counselors for the purpose of gain, the statute being directed against such purchases when made for the very purpose (as opposed to a contingent purpose) of bringing suit, *West v. Kurtz, City Ct.,* 3 *N.Y.S.* 14, and *Wightman v. Catlin,* 113 *App.Div.* 24, 98 *N.Y.S.* 1071.

The evidence before me does not in my opinion point to the type of transaction forbidden by the statute. To be sure claimant

through his attorney on acquiring the controversial notes made prompt demand for payment instructing such attorney "* * * to proceed to enforce payment * * *" However, suit was not filed against the defendant corporation until June 28, 1958 after the corporation had come into the funds now in hand, and such suit was abandoned when an opportunity to file a receivership claim was afforded.

In short, the initial letter of claimant's counsel dated January 18, 1955 and his follow-up demands for payment coupled with threats up to the time of bringing suit disclose the normal tactics of a lawyer seeking to realize on a client's claim and are not indicative of that litigious and cost-incurring intent and purpose which must be found to establish a case within the meaning of the New York statute. What is aimed at in the statute is the prevention of the promotion of ill-feeling and strife by attorneys in their purchase of choses in action for the very purpose of bringing suit thereon. Where the primary purpose of the purchase is something else such as investment or speculation and a purpose to sue is merely incidental to a purchase the statute is not violated, *Sprung v. Jaffe*, 3 *N.Y.2d* 539, 169 *N.Y.S.2d* 456, *reversing* 2 *A.D.2d* 838, 156 *N.Y.S.2d* 136. On the other hand, an attorney who purchases a bond and mortgage at half past 10 o'clock in the morning on borrowed money after a full investigation of the value of the mortgaged premises and without demand brings suit on same on the afternoon of the same day will not be heard to say that such purchase was made for investment, *Maxon v. Cain*, 22 *App.Div.* 270, 47 *N.Y.S.* 855.

I conclude that the evidence before me supports a finding that claimant did not violate the New York statute, and there being no proof of champerty under Delaware law, nor any other valid reason advanced why claimant as the successful purchaser in an arm's length transaction of the notes in issue may not stand in the place of the original holders of such notes, the exceptions to the Hausknecht claim will be overruled.

On notice, an order allowing the claim of Harry Hausknecht may be submitted.