**Cecil La'Roy HALL, Petitioner,**

v.

**STATE of Delaware, Respondent.**

Civ. A. No. 94M–02–003.

Superior Court of Delaware,
New Castle County.

Submitted: June 30, 1994.
Decided: Sept. 16, 1994.

Cecil La'Roy Hall, Wilmington, pro se.

Christina Showalter, Deputy Atty. Gen., for respondent State of Del.

## MEMORANDUM OPINION

BABIARZ, Judge.

This case was initiated by Cecil La'Roy Hall, *pro se*, when he filed against the State of Delaware (the "State") a "Petition for the Return Of Seized Property" (the "Petition") pursuant to Superior Court Criminal Rule 41(e) and Superior Court Civil Rule 71.3(c). The case is before the court on the State's Motion to Dismiss.

### I. FACTS

In the Petition, Mr. Hall ("Petitioner") alleges that he is a prisoner being held in default of bail at the Multi–Purpose Criminal Justice Facility (the "MPCJF") in Wilmington, Delaware. He asserts the right to recover certain property which the Wilmington Police Department allegedly seized from one Andrew Cooper when Mr. Cooper was arrested on July 14, 1992. According to the petition, Mr. Cooper is a detainee at the MPCJF awaiting trial on theft-related charges. In a written agreement titled "Assignment of Cause of Action" (the "Assignment"), Mr. Cooper assigned his rights in the seized property to Petitioner in exchange for the sum of one dollar, subject to an additional undisclosed agreement between the parties. The undisclosed agreement was discovered at oral argument when Petitioner revealed, in response to inquiry by the Court, that Mr. Cooper had agreed to pay Petitioner a percentage of any recovery resulting from this litigation.

The Assignment, which is attached to the Petition, purports to transfer to Petitioner Mr. Cooper's right to $86,603.00 in "American Currency" and a "1984 Oldsmobile 98 registered to Raymond White, with registra-

tion being from the State of Pennsylvania." Petitioner alleges that both the currency and the car were seized from Mr. Cooper at the time of his arrest. He also claims that the property was seized without probable cause and in violation of Mr. Cooper's rights under the Fourth Amendment to the United States Constitution and the Constitution of the State of Delaware. Additionally, Petitioner asserts that the State has failed to file an appropriate request or notice of intent to forfeit the seized property and that the State is now barred from doing so by the Statute of Limitations. Finally, Petitioner alleges that he has standing to bring this action by virtue of the Assignment.

In its motion to dismiss the Petition, the State asserts that Andrew Cooper was arrested on July 14, 1992 for conducting a "flim-flam con game". The State alleges that on the day of Mr. Cooper's arrest, Wilmington Police obtained and executed a search warrant for the 1984 Oldsmobile 98 automobile, but that the Police never seized the vehicle and the State never sent notice of intent to move or forfeit the vehicle. According to the State's motion, Danvir Towing transported the car to Danvir's lot where the vehicle's owner could have picked it up at any time. The State asserts upon information and belief that Danvir disposed of the vehicle because no one came to claim it.

Additionally, the State asserts that the only United States currency seized as a result of the search was a $2.00 bill. The State claims that a bundle of "play money" in $1,000.00 bills was also seized, but that the "play money" cannot be turned over to Petitioner because it is evidence that may be used in the trial against Mr. Cooper. Furthermore, the State asserts that even if it had noticed its intent to forfeit the property which is the subject of this dispute, Mr. Hall would lack standing to seek its return because title to seized property vests in the State at the moment the property is illegally used or acquired. In support of its position, the State cites 16 Del.C. § 4784(a) ("no property right shall exist ...") and *Eggleston v. State of Colorado*, 10th Cir., 873 F.2d 242, 247 (1989) ("judgment of forfeiture relates back to the time of the unlawful act.... [It]

therefore cuts off the rights of subsequent lienholders or purchasers...."). For these reasons, the State argues that the Petition should be dismissed.

## II. ISSUES AND ANALYSIS

The State's motion to dismiss will be granted, but not for the reasons advanced by the State. The Petition will be dismissed because the assignment through which Petitioner obtained this cause of action is champertous.

Champerty is " 'an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense.' " *Gibson v. Gillespie*, Del.Super., 152 A. 589, 593 (1928) (quoting *Hamilton v. Gray*, 67 Vt. 233, 31 A. 315, 315 (1895)). *See also Compaq Computer Corp. v. Horton*, Del.Supr., 631 A.2d 1, 5 n. 1 (1993). It is closely-related to the concept of *maintenance* —"an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to prosecute or defend it. In other words it is the intermeddling in a suit by a stranger, one having no privity or concern in the subject matter and standing in no relation of duty to the suitor." 14 Am.Jur.2d *Champerty And Maintenance* § 2 (1964) (footnotes omitted). *See also Bayard v. McLane*, Del. Supr., 3 Del. (3 Harr.) 139, 208 (1840).

The doctrines of champerty and maintenance apply only to "volunteers" or "strangers"—those who have no legal interest in the subject matter of the dispute; those who have no relation to either of the parties to the dispute; and those who are not acting in the lawful exercise of their profession as counsel to one of the parties. *See Bayard*, 3 Del. (3 Harr.) at 208, 213. An agreement is not champertous where the assignee has some legal or equitable interest in the subject matter of the litigation *independent from* the terms of the assignment under which the suit was brought. *See Drake v. Northwest Natural Gas Co.*, Del. Ch., 165 A.2d 452, 454 (1960) and *Gibson*, 152 A. at 593. However, an agreement is tainted with

champerty where the assignee had *no* interest in the cause of action prior to the assignment. *See Gibson,* 152 A. at 593.

■ Accepting the Petitioner's version of the facts as true, the Court concludes that Mr. Hall obtained this cause of action through a champertous assignment. Nothing in the record suggests that petitioner had any legal or equitable interest in the subject matter of this litigation prior to the assignment signed by Mr. Cooper. *See Drake,* 165 A.2d at 454; *Gibson,* 152 A. at 593. The petition states that the vehicle allegedly seized from Mr. Cooper was titled in Cooper's name and registered to one Raymond White. Thus, there is no indication in the record that Petitioner had any interest in the 1984 Oldsmobile 98. With respect to the allegedly seized currency, the petition states that it was taken from Mr. Cooper, not the Petitioner. Thus, Mr. Hall's *only* connection with the subject matter of this dispute is through the assignment signed by Mr. Cooper six days before the Petition was filed.[1] Similarly, absent from the record is any evidence suggesting that Petitioner stands in a close relationship with Mr. Cooper by consanguinity or affinity. *See Bayard,* 3 Del. (3 Harr.) at 208. Finally, the Court notes that Mr. Hall's involvement in this case cannot be as counsel to Mr. Cooper because Mr. Hall is not licensed to practice law in the State of Delaware or anywhere else. Therefore, Petitioner could not be acting in the lawful exercise of the practice of law when he filed the Petition which initiated this lawsuit. *See Id.*

In a champertous assignment, an assignee of a cause of action initiates litigation at his or her own risk and expense in consideration of receiving a portion of the proceeds if successful. *See Compaq,* 631 A.2d at 5 n. 1; *Gibson,* 152 A. at 593. These elements of champerty are present in the instant case. First, it is apparent that Petitioner, as assignee of a cause of action, endeavored to carry on this litigation at his own risk and expense because he applied for and obtained from this Court an order waiving prepayment of fees, costs and security on grounds

that Petitioner is an indigent. *See* Super.Ct.Civ.R. 112. Second, it is equally apparent that in consideration of bringing this suit at his own risk and expense Mr. Hall would share in any recovery. This was made clear at oral argument when, in response to inquiry by the Court, Petitioner disclosed that Mr. Cooper had agreed to pay Petitioner a percentage of any proceeds from this litigation.

■ It is the duty of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty. *Gibson,* 152 A. at 593. *See also Hannigan v. Italo Petroleum Corp. of America,* Del.Super., 178 A. 589, 591 (1935) ("our courts have held that agreements of [champertous] character are necessarily absolutely void"). Although *Hannigan* and *Gibson* were decided at a time when champerty was still a criminal offense in Delaware, *see Hannigan,* 178 A. at 591 and *Gibson,* 152 A. at 593, the doctrine continues to have vitality in this State. In *Compaq,* the Supreme Court noted that the activities of the plaintiff constituted neither champerty nor maintenance, implicitly recognizing the continuing vitality of the doctrines under Delaware law. 631 A.2d at 5 n. 1. *See also Drake,* 165 A.2d at 454 ("it is the mere volunteer who takes a claim for the purpose of collecting and dividing the proceeds with its owner, if they prevail, who is condemned as a champertor in Delaware").

The doctrine of champerty "is based upon the ground that no encouragement should be given to litigation by the introduction of a party to enforce those rights which the owners are not disposed to prosecute." *Gibson,* 152 A. at 593 (quoting *Hamilton v. Gray,* 67 Vt. 233, 31 A. 315, 315 (1895)). In the instant case, Petitioner attempts to enforce a claim which Mr. Cooper, the true owner of the claim, did not care to prosecute. Despite assertions in the Petition that Mr. Cooper's constitutional rights were violated, there is no public policy justification for permitting petitioner to proceed because nothing pre-

---

1. Even the caption of the Petition supports this finding; the Petitioner identifies himself as follows: "CECIL LA'ROY HALL, *By Assignment,* Petitioner." *See* caption of Petition for Return of Seized Property (emphasis supplied).

vented Mr. Cooper from asserting his constitutional rights on his own behalf.

Furthermore, application of the doctrine is particularly appropriate in this case because it supports the public policy of conserving the State's resources. If this claim and others like it are permitted to proceed, the State would be forced to expend its limited resources in both the judicial and executive branches to resolve controversies in which the initiating party, an assignee, would have absolutely no interest but for the assignment. This allocation of State resources would be otherwise unnecessary in cases, like the case *sub judice*, where the original owner of the claim, for whatever reason, has no interest in pursuing the cause of action.

It should be noted that this decision in no way affects an assignee's ability to enforce contracts, notes, mortgages and financial instruments in general. In *Bayard v. McLane*, the Court observed that the "laws of alienation in respect to every species of property promote its transfer as more consistent with the condition of things here, and with public policy." 3 Del. (3 Harr.) at 209. It has long been recognized that public policy favors assignments of financial instruments as a means of encouraging trade and commerce. *See Drake*, 165 A.2d at 454. It is critical to the marketability of contracts, notes, mortgages and financial instruments in general that they be enforceable by assignees. The importance of enforceability by assignees is reflected in this State's statutory law. *See, e.g.*, 6 Del.C. § 2702 (assignees of bonds, specialties and notes may enforce in their own name); 10 Del.C. § 3902 (assignees of contracts may enforce in their own name). For these reasons, this opinion does not affect the law regarding an assignee's ability to enforce contracts, notes, mortgages and financial instruments in general.

### III. CONCLUSION

For the foregoing reasons, the State's motion to dismiss the Petition is hereby GRANTED.

IT IS SO ORDERED.