IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

SOUTHEASTERN CHESTER COUNTY   :
REFUSE AUTHORITY,             :
                              :      C.A. No.  K14C-06-016 JJC
          Plaintiff,          :
                              :
     v.                       :
                              :
BFI WASTE SERVICES OF         :
PENNSYLVANIA, LLC,            :
                              :
          Defendant.          :


Submitted:  April 13, 2015
Decided: June 1, 2015

**<u>MEMORANDUM OPINION</u>**

**<u>UPON DEFENDANT'S  MOTION TO DISMISS;</u>**
**<u>DENIED in part,  GRANTED in part</u>**

Brian T. Jordan, Esquire of Jordan Law LLC , Wilmington, Delaware; attorneys for the Plaintiff.

Joseph C. Schoell, Esquire of Drinker Biddle & Reith LLP, Wilmington, Delaware, attorneys for the Defendant.

CLARK, J.

### I. INTRODUCTION

Plaintiff Southeastern Chester County Refuse Authority ("SECCRA") has

sued  Defendant BFI Waste Service of Pennsylvania, LLC's ("BFI") for unpaid

tipping fees for the use of SECCRA's solid waste facility.   As alleged in the complaint, Signature Waste, LLC ("Signature")  owed the tipping fees to SECCRA for use of its facility in June and July 2011 for solid waste disposal.  BFI purchased Signature in June 2011. SECRRA now sues BFI, as a successor-in-interest, for these unpaid tipping fees owed by Signature.  Specifically, SECCRA sues BFI for (1) breach of contract, (2) breach of the duty of good faith and fair dealing, and (3) for an alternative claim of unjust enrichment.

BFI has filed a motion to dismiss SECCRA's complaint pursuant to Superior Court Civil Rule 12(b)(6).  BFI alleges, *inter alia*, that (1) an assignment by Signature to SECCRA of the right to sue BFI for these unpaid tipping fees is not valid; (2) an anti-assignment clause in the asset purchase agreement (hereinafter, "APA") between Signature and BFI absolves BFI of liability for Signature's obligations;  (3) SECRRA's claim is champertous and thus unenforceable; and (4) SECCRA fails to state a claim for both the unfair dealing and unjust enrichment claims.   For the following reasons, Defendant BFI's Rule 12(b)(6) motion is DENIED, with the exception of its motion to dismiss the unfair dealing claim which is GRANTED.

## II.  PLED FACTS AND PROCEDURAL HISTORY

On June 15, 2011, BFI entered into the APA with Signature, and

2

Signature's principal, Brian Lockhart, wherein BFI purchased Signature's assets and its contractual rights. The APA between Signature and BFI contained an anti-assignment clause addressing the non-assignability of obligations in the APA, providing the folllowing:

> 16.1. _Assignment_. *This Agreement may not be assigned (except by operation of Law) or otherwise transferred without the express written consent of the Seller [i.e. Signature] and Buyer [i.e. BFI] (which may be granted or withheld in the sole and absolute discretion of Seller and Buyer); provided, however, that Buyer may assign this Agreement to an Affiliate of Buyer or any successor of Buyer to the Business without the consent of Seller or Member.*[1]

Shortly after closing, SECCRA asserted a claim against Signature for uncollected disposal fees attributed to their prior business operations and announced its intent to pursue BFI– as Signature's successor-in-interest– for the unpaid tipping fees at issue in this suit. Next, by letter dated November 29, 2011, BFI and Signature, acknowledging that this claim was pending, further modified the APA and agreed– in relevant part– to the following:

> *[o]n or about the Closing Date, [SECCRA] asserted a claim against [Signature] for unpaid disposal fees due for waste delivery by [Signature] to the SECCRA Community Landfill ... and stated that SECCRA would attempt to collect any unpaid amount of such disposal fees from [BFI] as a successor-in-interest to [Signature]. [Signature] and [Brian Lockhart] acknowledge and agree that the uncollected disposal fees constitute an Excluded Liability pursuant to the Purchase*

---

[1] Plaintiff's Complaint, Exhibit A, at p. 23.

3

*Agreement and [BFI] is entitled to indemnification from [Signature] and [Brian Lockhart] for any Losses incurred in connection with any Excluded Liabilities.[2]*

Recognizing an increased likelihood of future litigation, BFI used the November 29th modification to bargain for additional assurances. Specifically, the modifications allowed BFI to retain $50,000.00 from the Holdback Funds subject to the following conditions:

> *Retained Funds. [BFI] shall be permitted to retain the Retained Funds as security for any Losses that [BFI] may incur in connection with the SECCRA Claim or otherwise until such time as [Signature] provides a copy of a written settlement agreement executed by [BFI] and SECCRA that (a) fixes the amount of disposal fees due from [Signature] to SECCRA in connection with the SECCRA Claim, and (b) includes an express acknowledgment that [BFI] will not have any liability to SECCRA in connection with the SECCRA Claim. Within ten business days of receipt of such a settlement agreement, [BFI] shall transfer to [Signature] by wire transfer of immediately available funds any portion of the Retained Funds not expended in connection with any Losses incurred by [BFI] or that are not then subject to a pending indemnification claim by [BFI] against [Signature] or [Brian Lockhart].[3]*

At issue at this stage of the proceedings is the March 1, 2014 attempted assignment by Signature and Brian Lockhart of all rights held by Signature to claim from BFI the portion of the holdback funds allocated to cover the SECCRA claim.

---

[2] Plaintiff's Complaint, Exhibit C.

[3] *Id.*

4

Namely, the assignment attempted to assign to SECCRA all of Signature's "right, title and interest in and to the balance of the 'Holdback Funds' and to any and all claims and causes of action related thereto that they may have against BFI" arising under and out of the APA as amended.[4]

On June 10, 2014, after failed attempts by SECCRA to claim the $50,000.00 in retained funds, SECCRA filed a complaint with this Court alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. In response, BFI filed the present Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Oral argument took place on September 26, 2014, and the parties offered supplemental written submissions with respect to their positions on the effects of the APA's anti-assignment clause.[5] The Court has reviewed all written submissions as well as the transcript from the oral argument in this matter.

### III. STANDARD OF REVIEW

Under Superior Court Civil Rule 12(b)(6) "[t]he pleading standards governing

---

[4] Plaintiff's Complaint, Exhibit D.

[5] On November 26, 2014 the Court informed counsel that the case would be reassigned to a new Judge. This matter was therefore deemed submitted on April 13, 2015 upon reassignment of the matter.

5

the motion to dismiss stage of proceedings in Delaware . . . are minimal."[6] Furthermore, the Court accepts all well-pled allegations as true.[7] A "well-pled" matter only requires that the complaint put a party on notice of the claim being brought.[8] If the complaint and facts alleged are sufficient to support a claim on which relief may be granted, the motion is not proper and should be denied.[9] The test for sufficiency is a broad one.[10] The Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[11] Dismissal is warranted only when "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[12]

## IV. DISCUSSION

*A. Breach of Contract*

First, BFI contends that SECCRA's claim for breach of contract should be

---

[6] *Cen. Mortgage Co. V. Morgan Stanley Mortgage Capital Holdings, LLC*, 2011 WL 3612992, at *5 (Del. August 18, 2011)

[7] *Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *2 (Del. Super. Ct. Mar. 31, 2009).

[8] *Savor, Inc. v. FMR Corp.*, 2001 WL 541484, at *2 (Del. Super. Ct. Apr. 24, 2001).

[9] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).

[10] *Id.*

[11] *Id.*

[12] *Thompson v. Medimmune, Inc.*, 2009 WL 1482237, at *4 (Del. Super. Ct. May 19, 2009).

6

dismissed because it is predicated solely upon an invalid assignment. Specifically, BFI argues that the purported assignment lacked consideration, was champertous, and violated an anti-assignment provision in the APA. Next, BFI contends that even if the assignment was valid, BFI's release of the retained funds were subject to a contingency predicate that has not been met.

Conversely, SECCRA's contends, *inter alia*, that the assignment was valid; that SECCRA's agreement to forbear and waive future claims against Signature and Lockhart was proper consideration; the assignment was not champertous; and BFI's position on the contingency predicate is an unreasonable interpretation of the APA and would produce an absurd result.

In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract; second, the breach of an obligation imposed by that contract; and third, resultant damage to the plaintiff.[13]

SECCRA has alleged a contract – between itself and Signature – for the tipping fees that remain unpaid. SECCRA further alleges that it received a valid assignment from Signature permitting SECCRA's claim for monies essentially held in trust by Signature's successor-in-interest BFI for $50,000 in unpaid tipping fees.

---

[13] *VLIW Technologies, LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

A threshold issue is whether or not this March 1, 2014 assignment between Signature, Lockart and SECCRA is legally enforceable on its face.

BFI first challenges the assignment relied upon by SECCRA by alleging lack of consideration. In Delaware, "a promise to forbear enforcement and to dismiss a lawsuit is valid consideration for an agreement. Furthermore, as a general rule, a forbearance to sue is valid consideration whether the suit would have been successful or not."[14] In the present case, SECCRA has pled facts – SECCRA promised to waive any future claims against Signature stemming from their previous business transactions – that raise a reasonably conceivable basis to support a finding of sufficient consideration in exchange for the assignment.

Second, BFI argues the alleged assignment should be dismissed as champerty because "[i]t is the duty of the court to dismiss a case in which the evidence discloses that the assignment of the cause of action sued upon was tainted with champerty."[15] "Champerty is an agreement between an owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds

---

[14] *Hensel v. U. S. Electronics Corp.*, 262 A.2d 648, 650 (Del. 1970) (citing 17A Am. Jur. 2d Contracts § 117).

[15] *Hall v. State*, 655 A.2d 827, 830 (Del. Super. 1994) (citing *Gibson v. Gillespie*, 152 A. 589, 593 (Del. Super. 1928).

with the owner, if they prevail."[16]  On the other hand "[a]n agreement is not champertous if the assignee has some legal or equitable interest in the subject matter of the litigation that does not merely stem from terms of the assignment."[17]  Here, absent additional evidence not yet developed,  SECCRA's interest is intertwined with the subject matter of this case.  Not only does SECCRA's interest in the present litigation predate the assignment at issue,  SECCRA's claims were the catalyst of the November 29, 2011 modification that created the retained funds.  Moreover, under the assignment, Signature has no further stake in the current case.  SECCRA would retain all of the proceeds resulting from a potentially favorable outcome.  Accordingly, the Rule 12(b)(6) motion on the basis of champerty will be denied.

Next, BFI contends  the APA contains a provision[18] that prohibits any assignment that is not consented to in writing.  Because BFI did not consent in writing to an assignment by Signature for SECCRA to sue BFI for the retained funds, it argues that the provision renders the assignment– and therefore, any contractual obligations under it –  invalid.  BFI relies upon *Paul v. Chromolytes*,

---

[16] *Arcoria v. RCC Associates, Inc.*, 2014 WL 620361, at *2 (Del. Super. Jan. 8, 2014).

[17] *Id*.

[18] *See supra* fn. 1.

343 A.2d 622 (Del. Super. Ct. 1975) for the premise that such clauses are enforceable. SECCRA makes two arguments in opposition: (1) under applicable law, the text of the provision prohibits the assignment of Signature's duty to perform, not its right to the money in the Retained Funds[19]; and (2) BFI waived its right to enforce the anti-assignment provision.

Here, the *Paul* decision cited by BFI seems to both prohibit, in this instance, the assignment of duties to perform **and rights** under the contract given the anti-assignment clause.[20] To the extent that the *Paul* decision would prohibit the claim at issue, however, it would be inconsistent with *Restatement (Second) of Contracts*

---

[19] SECCRA cites the *Restatement (Second) of Contracts* § 322 (1981) which states:

> (1) Unless the circumstances indicate the contrary, a contract term prohibiting assignment of "the contract" bars only the delegation to an assignee of the performance by the assignor of a duty or condition.
>
> (2) A contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,
>
>> (a) does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation;
>>
>> (b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective;
>>
>> (c) is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor or the obligor from discharging his duty as if there were no such prohibition

[20] *Paul,* 343 A.2d at 626.

10

§322(1980) which does not prohibit a suit for damages under such circumstances. Furthermore, the *Paul* decision is procedurally distinguishable because it was decided in the context of a motion for summary judgment after a fully developed record. In the present case, there is not a complete factual record.

Moreover, SECCRA, in the alternative, argues that BFI's conduct since execution of the APA would constitute a waiver of BFI's rights to rely on a non-assignability clause. Delaware courts have long upheld the validity of clauses in contracts that frame the scope within which subsequent transfers and assignments may be made. Furthermore, any waiver of a non-assignability provision or consent to its violation "would have to be clear, distinct, and unequivocal."[21] Nevertheless, waiver claims are generally issues of fact, requiring an extensive review of the facts. As this Court has explained,

> *[a] waiver may be implied from the circumstances, i.e., the conduct of the waiving party, but an implied waiver must be established by a clear, unequivocal, and decisive act showing the requisite intent to waive. Ordinarily, the existence of an implied waiver is a question for the trier of fact, which must decide whether a litigant's conduct evidences a conscious and voluntary abandonment of [the] right or privilege.*[22]

---

[21] *SLMSoft.Com, Inc. v. Cross Country Bank*, 2003 WL 1769770, at *9 (Del. Super. Apr. 2, 2003) (citing *Paul*, 343 A.2d at 625).

[22] *The Reserves Dev. Corp. v. Esham*, 2009 WL 3765497, at *9 (Del. Super. Nov. 10, 2009) (internal quotations omitted).

Accordingly, even if the Court were to determine that the anti-assignment clause would unambiguously bar SECCRA's claims, SECCRA has pled sufficient facts to raise a reasonably conceivable basis to support a finding that BFI waived its rights under the assignment provision. The modifications to the APA acknowledging and addressing the claims by SECCRA, together with other conceivable facts, could constitute a waiver by BFI of its alleged rights under the clause in the APA. The record in this case is simply insufficient to warrant a dismissal of SECCRA's contract claims pursuant to Superior Court Civil Rule 12 (b)(6).

Finally, BFI contends that even if the assignment was valid, BFI's release of the retained funds were subject to a contingency predicate that has not been met.[23] Under the terms of the modified APA, the purpose of the $50,000.00 retained funds was to protect against any losses that BFI may incur in connection with the "SECCRA Claim." The money would be returned to Signature – or SECCRA under the allegedly valid assignment – as part of the purchase price if and when "[Signature] provides a copy of a written settlement agreement executed by [BFI] and SECCRA that (a) fixes the amount of disposal fees due from [Signature] to SECCRA in connection with the SECCRA CLAIM, and (b) includes an express

---

[23] *See supra* fn. 3.

acknowledgment that [BFI] will not have any liability to SECCRA in connection with the SECCRA Claim."

At this stage, BFI asks this Court to dismiss SECCRA's claim for failing to meet a contingency predicate that can only be accomplished with its participation. Assuming SECCRA has delivered a settlement agreement under the terms of the APA – which SECCRA contends it has – the only thing that is missing is BFI's agreement. Moreover, where the factual record is incomplete, Rule 12(b)(6) motions are generally denied.

Here, since there was conceivably a valid assignment and SECCRA has alleged pleadeable damages from the breach at issue, SECCRA has pled facts that when accepted as true, state a claim for its breach of contract allegations against BFI. BFI's Motion to Dismiss SECCRA's breach of contract claim is therefore denied.

## B. Claim: Unjust Enrichment[24]

Unjust enrichment is "the unjust retention of a benefit to the loss of another,

---

[24] *See Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *14 (Del. Ch. Jan. 31, 2013), as revised (Feb. 7, 2013) ("In some circumstances, alternative pleading allows a party to seek recovery under theories of contract or quasi-contract. This is generally so, however, only when there is doubt surrounding the enforceability or the existence of the contract ... Where, as here, doubt exists surrounding the existence of a contract, the Court will allow [plaintiff] to seek recovery under this theory provided the requisite elements are adequately pleaded.").

13

or the retention of money or property of another against the fundamental principles of justice or equity and good conscious."[25] The elements of unjust enrichment are (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and impoverishment; (4) the absence of justification; and (5) the absence of a remedy provided by law.[26] "If a plaintiff seeks only damages to correct an unjust enrichment, jurisdiction lies in Superior Court even though the claim is fundamentally an equitable one."[27]

Here, there are facts alleged, which if true, sustain this claim as well. As to the fifth element of the claim, if SECCRA's breach of contract claim would be held unavailable, there would be an absence of a remedy provided by law. Since pleading in the alternative is acceptable and cognizable under our Rules of Civil Procedure, the fifth element is also met for purposes of Rule 12(b)(6).[28]

---

[25] *Deere & Co. v. Exelon Generation Acquisitions, LLC*, 2014 WL 904251, at *5 (Del. Super. Mar. 7, 2014) reargument denied, 2014 WL 2895393 (Del. Super. June 24, 2014) (quoting *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 891 (Del. Ch. 2009)).

[26] *Id*.

[27] *St. Search Partners, L.P. v. Ricon Int'l, L.L.C.*, 2005 WL 1953094, at *3 (Del. Super. Aug. 1, 2005) (*see also Grace v. Morgan*, 2004 WL 26858, at *3 (Del. Super. Jan. 6, 2004) ("The Court of Chancery has held ... that where plaintiff has pled the first four elements of the claim but sought money damages in order to be made whole, Chancery has no jurisdiction because no equitable remedy is sought.")).

[28] Super. Ct. Civ. Rule 8(a) and (e)(2).

14

Accordingly, the motion to dismiss this claim is also denied.[29]

## C. Claim: Implied Covenant of Good Faith and Fair Dealing

SECCRA also advances a claim for breach of the implied covenant of good faith and fair dealing. Under Delaware law, the implied covenant "inheres" in every contract.[30] "It is triggered when the defendant's conduct does not violate the express terms of the agreement but nevertheless deprives the plaintiff of the fruits of the bargain."[31] In essence, it is a "judicial tool used to imply terms in a contract that protect the reasonable expectations of the parties."[32] To prove a breach of the implied covenant, "the plaintiff must allege an implied contractual obligation not to engage in certain conduct, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[33] In addition, "bad faith must be shown to

---

[29] This Court's precedent supports denial and illustrates the minimal requirements placed on the plaintiff at this stage of the proceeding. *See St. Search Partners, L.P.*, 2005 WL 1953094, at *3; *Grace*, 2004 WL 26858 at *3.

[30] *Amirsaleh v. Bd. of Trade of the City of New York, Inc.*, 2009 WL 3756700, at *4 (Del. Ch. 2009).

[31] *Id.*

[32] *Id.* (Citing *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443 (Del.1996)) *see also PAMI-LEMB I Inc. v. EMB-NHC, L.L.C.,* 857 A.2d 998, 1016 (Del.Ch.2004) (The parties' reasonable expectations are determined by inquiring whether the parties would have bargained for a contractual term proscribing the conduct that allegedly violated the implied covenant had they foreseen the circumstances under which the conduct arose.).

[33] *Amirsaleh*, 2009 WL 3756700, at *4.

establish an implied covenant breach ...to prove bad faith a plaintiff must demonstrate that the defendant's conduct was motivated by a culpable mental state."[34]  While allegations involving conditions of mind may be averred generally, they still must be pled[35].

BFI petitions this Court to dismiss SECCRA's claim because they challenge the very existence of an implied covenant.  In the alternative, if the Court were to find one, BFI contends there are no facts to suggest they acted in bad faith.  In this context, the Court agrees that there are insufficient facts pled to maintain a claim

[34] *Id*. *"Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 101 (Del.1992) (holding that an employee must prove that the employer acted with "fraud, deceit, or misrepresentation" to establish a breach of the implied covenant in an at-will employment contract); *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992-93 (Del. 1998) (extending the "fraud, deceit, or misrepresentation" requirement to proving a breach of the implied covenant in a limited partnership agreement); *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, L.P.*, 624 A.2d 1199, 1208 (Del.1993) (noting in the context of the implied covenant that "an allegation of bad faith ... relates to state of mind"); *Id*. at 1208 n. 16 ("The term 'bad faith' is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.") (citing BLACK'S LAW DICTIONARY 337 (5th ed.1983)); *Cantor Fitzgerald, L.P. v. Cantor*, 2000 WL 307370, at *15, n. 51 (Del. Ch. Mar.13, 2000) (applying the "fraud, deceit, or misrepresentation" formula to breach of the implied covenant in a partnership agreement); *Continental Ins. Co.*, 750 A.2d at 1234 (reasoning that a party's "subjective motivation" is relevant to determining whether the implied covenant has been breached); *Williams Natural Gas Co. v. Amoco Prod. Co.*, 1991 WL 58387, at *11 (Del.Ch.1991) ( "Wrongful intent is an element of a claim based on the implied covenant of good faith doctrine."); *Quadrangle Offshore (Cayman) L.L.C. v. Kenetech Corp.*, 1999 WL 893575, at *10 (Del.Ch. Oct.13, 1999), *aff'd,*751 A.2d 878 (Del.2000) ("To substantiate a breach of [the] implied covenant ... the [plaintiff] must prove that [the defendant] intentionally embarked upon a[n] [impliedly prohibited] course of action ... and did so in bad faith.") (emphasis added)."

[35] Super. Ct. Civ. Rule 9(b).

16

hinging upon the "condition of mind" of an entity such as would be required for this claim. SECCRA makes the claim without proffering any factual grounds that could support it. Namely, the complaint in this case does not contain an averment that supports a finding of bad faith in this case. It merely alleges "breach of an implied obligation." Such an allegation falls short, in this instance, of even notice pleading obligations. Therefore, BFI's Rule 12(b)(6) Motion to Dismiss the claim for breach of the implied covenant of good faith and fair dealing is GRANTED.

IT IS SO ORDERED.

       /s/ Jeffrey J Clark