WALTER L. KELLEY *vs.* EMMa S. BLANCHARD *et als.*

APRIL 10, 1912.

PRESENT: Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)  Champerty.  Contracts.*

Where an agreement is champertous, the illegality extends to all acts done in pursuance thereof.

Where an agreement is champertous, a deed between the parties in pursuance of the agreement, whereon a bill in equity to set aside a foreclosure is based, is tainted with the same illegality and affords no basis for relief.

Champerty is an offence against the law and avoids every contract into which it enters.

After a foreclosure, the mortgagor deeded his interest to complainant, under an agreement by which complainant was to bring proceedings at his expense to set aside the foreclosure sale, and if successful in this, to sell the property and divide the profits.

*Held,* that the agreement was champertous.

BILL IN EQUITY to set aside foreclosure sale. Heard on appeal of complainants and dismissed.

DUBOIS, C. J. This is a bill in equity brought in the Superior Court by Walter L. Kelley against Emma S. Blanchard, Roger F. Capwell, her attorney in fact, Ella F.

Luther and Samuel Kessler, to set aside a foreclosure sale, under mortgage from one Frank A. Whittaker to said Emma S. Blanchard, of two contiguous lots of land in the city of Pawtucket, one on High street and the other on Hamilton street and designated as lots numbered 90 and 104 on Pawtucket Assessors' plat card No. 43 and to redeem these lots from said mortgage and for an accounting of the rents and profits of the mortgaged premises. Said lots are in the possession of tenants of the respondent Kessler, who claims title thereto as grantee in a deed, from one Frederick E. Matteson, dated January 6, 1909, who was grantee in a deed of even date from the respondent Blanchard, who was the mortgagee and purchaser of them at the foreclosure sale in question, which was held December 29, 1905, at twelve o'clock noon. The complainant alleges that the foreclosure sale is invalid in this: that whereas in said mortgage twenty days' notice of said sale was required to be published in some newspaper printed in said Pawtucket, twenty days' notice thereof was not given because the publication of the notice was made on the 8th, 15th, 18th, 22nd and 29th days of December, 1905, in the Evening Times, a daily newspaper printed in said Pawtucket, and sale thereof was made on December 29th, 1905, at 12 o'clock noon. The interest of the complainant Kelley in the premises is derived as follows: after the disputed foreclosure had been accomplished and said Whittaker had vacated the tenement, some time in April, 1906, under notice to quit, given two months after the foreclosure, he lost all interest in the matter until the complainant called his attention to the insufficiency of the notice of foreclosure and entered into an agreement with him concerning which the complainant testified as follows: "Q. 8. Will you state to the court the terms and conditions or circumstances surrounding your purchase under that deed? Ans. The first information that I got in reference to this foreclosure or the title was through Frederick E. Matteson, who informed me that he thought the title was poor, and to see Mr. Reed about it,.

and I went to Mr. Reed and he showed me a copy of his abstract which he had forwarded to Mr. Capwell, and I went then to Mr. Whittaker and told him the circumstances which I had found out and 'Well,' he says, 'We haven't got any money to do anything with;' and they left it that way. 'Well,' I says, 'Why, I will put this money in and, if necessary, I will buy your interest and we will repurchase this property if possible, pay off the debts, and whatever there is obtained by the sale of it we will divide the profits,' which was agreed upon and he made that deed which was recorded. Q. 9. Who was to put up the money to redeem the property? Ans. I was. Q. 10. Was there a separate agreement made between you and Mr. Whittaker? Ans. Yes. Q. 11. And the nature of that was to divide the proceeds of the sale? Ans. Proceeds of the sale. Q. 12. Have you collected any of the rents or income of that property? Ans. One rent. Q. 13. How much was that? Ans. $7. Q. 14. Have you expended any money on it? Ans. I have not." Frank A. Whittaker also testified in relation to the matter as follows: "Q. 37. What was your deal with Mr. Kelley? Ans. Well; he came to me and he said that there was a flaw in that, and I said to him: 'Well, I will sell out to you all claims, whatever.' Q. 38. Did you tell him at that time that you didn't have any money to fight him with? Ans. Yes sir. Q. 39. At that time you didn't have any intention of making trouble? Ans. No sir; I didn't know anything about it. I was as innocent as could be. Q. 40. You wouldn't have made any claim to the property at all if Mr. Kelley hadn't come around? Ans. No sir. Q. 41. You did sell out to Mr. Kelley? Ans. Yes sir. Q. 42. How much did you get? Ans. One dollar. Q. 43. That is all the money you ever got? Ans. Yes sir."

On the first day of June, 1911, the following decree was entered in the Superior Court: "Upon motion of the complainant, Frank A. Whittaker is added as party complainant, on condition that complainants recover no costs to date."

Thereafter on the seventh day of said June the following agreement, signed by the solicitors for the respective parties was filed in the Superior Court: "It is agreed by the parties to the above entitled cause that it shall be decided in the same way as if the respondents had alleged in their answers a champertous agreement between the complainants with reference to the subject matter of this cause and claimed the benefit thereof as a defence." The respondents had severally made answer to the bill and issues of fact were framed and the cause was heard in the Superior Court on the seventh day of June, 1911, at which time testimony was taken and a decree was entered dismissing said bill upon the ground that the agreement between Whittaker and Kelley was champertous. The complainants appealed from said decree upon the grounds that the respondents were not entitled to the relief prayed for; that the decree is against the evidence and the weight thereof; that the decree is against the law and that the decree is against both law and evidence. The appeal was duly prosecuted to this court and is now before us for consideration. We deem it unnecessary to (1) consider anything other than the agreement entered into by Kelley and Whittaker, concerning the premises in dispute, for if the same is champertous, it is illegal and void in all its parts and the illegality extends to all acts done in pursuance thereof. Therefore if the agreement is illegal as aforesaid the deed from Whittaker to Kelley, whereon this bill is based, is tainted with the same illegality and affords no basis for these proceedings. The testimony of Kelley and Whittaker, concerning the agreement, hereinbefore set forth, is clear, concise and convincing. It leaves no manner of doubt concerning their intention in the premises. In fact it furnishes an excellent definition of champerty. "Champerty, which is a species of maintenance, has been defined to be the unlawful maintenance of a suit, in consideration of some bargain, to have a part of the thing in dispute, or some profit out of it, a bargain with a plaintiff or defendant, *campum partire,* to divide the land or other thing sued for

between them if they prevail at law, the champertor agreeing to carry on the suit at his own expense." 6 Cyc. 850 and cases cited. In the case of *Martin* v. *Clarke, et als*, 8 R. I. at p. 403, 1866, Brayton, J., speaking for the court, concluded the opinion in the language following: "Whether we look, therefore, at the ancient common law, to the English statutes upon the subject, or to our own legislation, the conclusion must be the same,—that champerty is an offence against the law. Being such, it must avoid every contract into which it enters." Although nearly half a century has elapsed since the promulgation of the foregoing opinion it has never been overruled, doubted or denied, and the same remains the law of the state. Neither has the legislature seen fit to modify the law as expressed in that opinion.

For these reasons we are of the opinion that the Superior Court did not err in entering the decree dismissing the complainants' bill of complaint.

The complainants' appeal is therefore dismissed, the decree appealed from is affirmed and the cause is remanded to the Superior Court for further proceedings.

*James E. Brennan*, for complainants.

*William M. P. Bowen*, for Emma S. Blanchard and Admr. estate of Roger F. Capwell.

*Gardner, Pirce & Thornley*, for respondents Luther and Kessler.

*William W. Moss*, of counsel.