TOSTE FARM CORPORATION et al.

v.

HADBURY, INC. et al.

Hadbury, Inc., et al.

v.

Peter F. Olberg et al.

No. 2000–363–Appeal.

Supreme Court of Rhode Island.

June 5, 2002.

John W. Ranucci, Joseph V. Cavanagh, Jr., Providence, for Plaintiff.

Matthew F. Medeiros, Providence, Fredrika H. Quinn–Little, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

The third-party plaintiffs, Richard N. Morash and Hadbury, Inc. (collectively referred to as Morash), appeal from an order of the Superior Court dismissing their complaint against two attorneys and a law firm. Morash alleged that Peter F. Olberg (Olberg) and Eric Shaw (Shaw), on behalf of the law firm of Battle–Fowler, LLP (Battle–Fowler) (collectively referred to as third-party defendants), engaged in a variety of tortious acts toward them in the course of rendering advice to a client, Morash's former business partner Carl Acebes (Acebes). Morash also alleged that although the third-party defendants no longer represented Acebes in the instant litigation,[1] they continued to direct and finance Acebes's pursuit of Morash in exchange for Acebes's agreement not to pursue a legal malpractice claim against them. After careful consideration of the trial justice's disposition of the third-party complaint below, we conclude that she erred by prematurely dismissing count 3, a cause of action under the doctrine of mainte-

nance. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

In June 1991, Morash executed a purchase and sales agreement for a 417–acre farm in Tiverton and Little Compton, Rhode Island. Morash intended to develop the property, and therefore, he listed the property for sale. At the same time, Acebes was looking to acquire land in the Tiverton and Little Compton area. He learned that Morash had acquired the Toste Farm property (Toste Farm) and decided to contact Morash about a potential sale. After meeting with Morash, Acebes learned that Morash was unwilling to sell the entire parcel but that Morash was interested in developing the land. Acebes proposed a joint venture, whereby they would jointly acquire and develop Toste Farm.

Negotiations began in September 1991. By October 1991, Morash began to question Acebes's true intentions about the future of the partnership. Morash suspected that Acebes would eventually seek to gain control of Toste Farm for his own purposes, rather than continue to effectuate the original goals of the partnership. Specifically, Morash was suspicious of Acebes's proposed provision for an auction process in which one of the partners may elect to retire from the partnership and seek to gain control of the partnership through an auction. At this point, Acebes had local Rhode Island counsel preparing the draft agreement. He decided to turn the draft over to the New York law firm of

---

1. There is no dispute that third-party defendants are not the attorneys of record in the instant case. Justice Flanders, in his dissenting opinion, correctly points out that it is unclear whether third-party defendants continue to represent Acebes in other forums or matters.

Battle–Fowler to assist him in finalizing the partnership agreement.

Allegedly, Olberg was responsible for ensuring that the agreement gave Acebes the flexibility he desired, in the event he wished to take control of the property. When Morash's attorney received Olberg's revised draft, Morash objected to its terms and sought to terminate the negotiations. Acebes contacted Morash, and they agreed to continue negotiations. By November 1991, the agreement was finalized.

However, eight months later, Acebes notified Morash that he intended to retire from the partnership and take advantage of an auction provision in the agreement that would force Morash to bid against Acebes for sole ownership of the property. The auction was scheduled for September 1992. One day before the auction, Olberg and Acebes met to prepare an auction bidding strategy. Morash alleges that at the meeting, Olberg realized that he had made a mistake in drafting the auction provision and that Acebes now had reason to pursue a malpractice claim against him. Despite his negligence, Olberg allegedly advised Acebes to pursue a bidding strategy unauthorized by the agreement.

At the auction, when Acebes attempted to pursue his strategy, Morash objected. Eventually, Morash was the highest bidder, which permitted him to elect to continue the partnership under the agreement. Because Morash elected to continue the partnership, Acebes's only remaining option was to request reimbursement of his financial contribution to the partnership. Olberg then allegedly advised Acebes to initiate baseless litigation against Morash to persuade Morash to sell his partnership interest. According to Morash, third-party defendants fig-

ured that the litigation would eventually wear Morash down and force him to reach a settlement with Acebes. The third-party defendants hoped that if Acebes was satisfied, he would not pursue a malpractice claim against them. To encourage Acebes, third-party defendants offered to finance the litigation, although they were not the counsel of record for the Rhode Island lawsuits.

After two procedurally defective lawsuits failed to succeed in the United States District Court for the District of Rhode Island, Acebes filed a declaratory judgment action in Superior Court against Morash, asking the trial justice to determine his rights under the partnership. Morash answered the complaint and filed a third-party complaint against third-party defendants. The third-party complaint alleged that third-party defendants (1) tortiously interfered with the partnership agreement by knowingly and willfully advising Acebes to adhere to an auction bidding strategy unsupported by the agreement, (2) committed abuse of process and malicious prosecution by fostering litigation against Morash, (3) were liable for common law maintenance, (4) were liable for slander of title, and (5) were liable for indemnity and contribution.

In February 2000, Acebes and Morash entered into a settlement agreement resolving the declaratory judgment action. The third-party defendants filed a motion to dismiss the remaining third-party complaint pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure, arguing that Morash could not prevail on his claims under any set of facts.

The trial justice agreed and granted third-party defendants' motion to dismiss. Morash timely appealed.[2]

**2.** Morash does not contest the trial justice's disposition of count 4, slander of title. In

## II

## Motion to Dismiss

■■■ "[T]he sole function of a motion to dismiss is to test the sufficiency of the complaint." *Rhode Island Employment Security Alliance, Local 401, S.E.I.U., AFL–CIO v. State Department of Employment and Training*, 788 A.2d 465, 467 (R.I.2002) (quoting *Rhode Island Affiliate, ACLU v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989)). "The standard for granting a motion to dismiss is a difficult one for the movant to meet." *Pellegrino v. Rhode Island Ethics Commission*, 788 A.2d 1119, 1123 (R.I.2002). "When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a [non-movant's] favor." *Id.* (quoting *Bernasconi*, 557 A.2d at 1232). "The motion may then only be granted if it 'appears beyond a reasonable doubt that a [non-movant] would not be entitled to relief under any conceivable set of facts.'" *Id.* (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I.2000)). "When this Court reviews a trial justice's granting of a Rule 12(b)(6) motion, we assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party." *Id.*

### A

### Maintenance

■■■ In count 3 of their third-party complaint, Morash alleges that third-party defendants committed "actionable maintenance" by funding and prompting Acebes's litigation against Morash. "As explained by the United States Supreme Court,

'[p]ut simply, maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome; and barratry is a continuing practice of maintenance or champerty.'" *Osprey, Inc. v. Cabana Limited Partnership*, 340 S.C. 367, 532 S.E.2d 269, 273 (2000) (quoting *In re Primus*, 436 U.S. 412, 424 n. 15, 98 S.Ct. 1893, 1900 n. 15, 56 L.Ed.2d 417, 429 n. 15 (1978)).

The modern trend among many courts is to abolish these causes of action because they have been supplanted by modern tort actions such as malicious prosecution and abuse of process, as well as the code of professional responsibility for attorneys. *See Hardick v. Homol*, 795 So.2d 1107, 1110–11 (Fla.Dist.Ct.App.2001) (citing *Alexander v. Unification Church of America*, 634 F.2d 673, 678 (2nd Cir.1980) (interpreting New York law); *Security Underground Storage, Inc. v. Anderson*, 347 F.2d 964, 969 (10th Cir.1965) (interpreting Kansas law); *McCullar v. Credit Bureau Systems, Inc.*, 832 S.W.2d 886, 887 (Ky.1992); *Tosi v. Jones*, 115 Ohio App.3d 396, 685 N.E.2d 580, 583 (1996)); *see also Saladini v. Righellis*, 426 Mass. 231, 687 N.E.2d 1224, 1227 (1997) (citing *Rice v. Farrell*, 129 Conn. 362, 28 A.2d 7 (1942)).

■■■ In this jurisdiction, laws that existed at common law remain applicable in Rhode Island "except as [they have] been changed by local legislation or custom." *Greater Providence Chamber of Commerce v. State*, 657 A.2d 1038, 1042 (R.I.1995) (quoting *City of Providence v. Comstock*, 27 R.I. 537, 543, 65 A. 307, 308 (1906)). Specifically, G.L.1956 § 43–3–1 provides:

addition, he has failed to brief count 5, indemnity and contribution. Thus, this Court will consider Morash's appeal of count 5 waived. *See Wilkinson v. State Crime Labora-*

*tory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002) (citing *O'Rourke v. Industrial National Bank of R.I.*, 478 A.2d 195, 198 n. 4 (R.I.1984)).

"In all cases in which provision is not made herein, the English statutes, introduced before the Declaration of Independence, which have continued to be practiced under as in force in this state, shall be deemed and taken as a part of the common law of this state and remain in force until otherwise specifically provided."

This Court has previously recognized the common law doctrines of maintenance and champerty. *See Kelley v. Blanchard*, 34 R.I. 57, 60–61, 82 A. 728, 729 (1912). In *Kelley*, this Court noted that "[a]lthough nearly half a century has elapsed since [*Martin v. Clarke*, 8 R.I. 389 (1866), the opinion adopting these doctrines], it has never been overruled, doubted or denied, and the same remains the law of the state. Neither has the [L]egislature seen fit to modify the law as expressed in [*Martin*]." *Kelley*, 34 R.I. at 61, 82 A. at 729 (citing *Martin*, 8 R.I. at 403). Thus, maintenance remains a recognized cause of action in Rhode Island.

Morash alleges that third-party defendants are liable for maintenance because they promised Acebes that they would fund the litigation against Morash to prevent Acebes from pursuing a malpractice claim against them. Specifically, Morash alleges that Olberg and Battle–Fowler advised Acebes to pursue litigation against Morash that they believed was meritless and that they would finance the cost on behalf of Acebes. The third-party defendants were allegedly motivated to do this to avoid defending themselves against Acebes's malpractice claims. If Morash can prove that third-party defendants engaged in such conduct, the implication is that third-party defendants acted as a party, and not as counsel, in directing the lawsuit to the extent that Acebes needed their approval to finalize the settlement agreement with Morash. This is exactly the type of agreement that is prohibited by the doctrine of maintenance.

■ Furthermore, we maintain that the existing relationship between third-party defendants and Acebes, whether it was a former or ongoing attorney-client relationship, does not insulate the third-party defendants from liability because when an attorney offers to finance litigation in which he or she is not the attorney of record, the character of the relationship changes such that the priority of the attorney is no longer the client, but instead, the furtherance of his or her own personal interests. In this case, third-party defendants may have been primarily interested in saving themselves from malpractice. Therefore, by allowing Morash to proceed with his maintenance claim, there is no risk to the sanctity of the attorney-client relationship because no attorney-client relationship exists between Acebes and third-party defendants in the instant litigation.

Thus, we conclude that the trial justice erred by dismissing count 3 of Morash's third-party complaint.

## B

### Remaining Claims

### Tortious Interference with Contract

■ In count 1 of the third-party complaint, Morash alleges that third-party defendants tortiously interfered with the partnership agreement. "To prevail on a claim alleging tortious interference with contract, a plaintiff must show '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [her, or its] intentional interference; and (4) damages resulting therefrom.'" *UST Corp. v. General Road Trucking Corp.*, 783 A.2d 931, 937 (R.I.2001) (quoting *Belliveau Building Corp. v. O'Coin*, 763 A.2d 622, 627 (R.I.2000)). Once the

plaintiff establishes the prima facie elements, the burden shifts to the defendant to prove that there was sufficient justification for the interference. *See id.* (citing *Belliveau,* 763 A.2d at 627). Further, plaintiff need not prove actual malice or ill will to show the interference was intentional. *See id.* "Legal malice, 'an intent to do harm without justification,' is sufficient." *Id.* (quoting *Jolicoeur Furniture Co. v. Baldelli,* 653 A.2d 740, 753 (R.I.1995)).

To support his claim for tortious interference, Morash alleged that Olberg intentionally interfered with the partnership agreement by "knowingly and willfully advising Acebes to adhere to a bidding strategy unsupported by the agreement at the auction of September 8, 1992 in an attempt to cover up his own negligence * * *." Morash further alleged that Olberg's actions deprived him of the opportunity to develop Toste Farm and the title thereto, as well as caused substantial legal expense and other compensatory damages. The third-party defendants argued that Morash had failed to state a claim because absent an attorney-client relationship, he did not have standing to assert the claims of alleged malpractice because third-party defendants owe no duty to non-clients. We agree.

▬▬ On appeal, third-party defendants argue that an attorney cannot be liable to a third party for acts performed in good faith within the scope of representation to his or her client. We agree that an attorney has no general duty to the opposing party, and therefore, a third party does not ordinarily have standing to pursue a claim for tortious interference against his adversary's attorney.

▬▬ In the past, we have recognized that an attorney can be "liable for injuries to third parties when his conduct is fraudulent or malicious." *Nisenzon v. Sadowski,* 689 A.2d 1037, 1046 n. 12 (R.I.1997)

(quoting *Likover v. Sunflower Terrace II, Ltd.,* 696 S.W.2d 468, 472 (Tex.Cr.App. 1985)). Specifically, "[a]n attorney owes a duty to an adverse party not to participate actively in fraudulent conduct." *Nisenzon,* 689 A.2d at 1046. This exception is limited, however, to protect the attorney-client relationship.

In this case, count 1 does not contain any allegations of fraudulent conduct that could constitute tortious interference under *Nisenzon.* Therefore, the trial justice appropriately dismissed count 1 of Morash's third-party complaint.

## Abuse of Process and Malicious Prosecution

▬▬ To show abuse of process, a plaintiff must demonstrate that "a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed." *Clyne v. Doyle,* 740 A.2d 781, 783 (R.I.1999) (quoting *Hillside Associates v. Stravato,* 642 A.2d 664, 667 (R.I.1994)). Malicious prosecution is defined as "a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein." *Kingstown Mobile Home Park v. Strashnick,* 774 A.2d 847, 858 (R.I.2001) (quoting *Clyne,* 740 A.2d at 782). Furthermore, "an action for malicious prosecution based on a prior civil suit may be maintained only where it is established that the prior suit resulted in a special injury to the defendant in that suit." *Ring v. Ring,* 102 R.I. 112, 114–15, 228 A.2d 582, 584 (1967). Seizure of property is a special injury. *See id.* at 115, 228 A.2d at 584.

In his third-party complaint, Morash alleged that because the federal court ac-

tions were instituted to circumvent the liability of third-party defendants to Acebes, they constituted an abuse of process and malicious prosecution. The trial justice dismissed the malicious prosecution claim, crediting third-party defendants' argument that the settlement between the parties extinguishes any malicious prosecution claim. Similarly, she credited third-party defendants' argument that the abuse of process claim could not stand because Morash did not allege that third-party defendants brought a lawsuit for an ulterior or wrongful purpose.

■ We agree that count 2 was properly dismissed. Taking the facts in the light most favorable to Morash, it is clear that the trial justice did not err in dismissing the malicious prosecution claim because the dispute between Morash and Acebes was resolved via settlement, and therefore, cannot be said to have terminated either successfully or unsuccessfully for either party. "[A] termination based on a compromise or settlement is not deemed favorable." *Nagy v. McBurney*, 120 R.I. 925, 931, 392 A.2d 365, 368 (1978) (citing *Moreau v. Picard*, 54 R.I. 93, 95, 169 A. 920, 921 (1934)); *see also Salvadore v. Major Electric & Supply, Inc.*, 469 A.2d 353, 357 (R.I.1983).

Furthermore, with respect to both claims, the third-party defendants did not initiate the litigation against Morash. Instead, Acebes initiated both federal court actions and the instant Superior Court action. Although Morash alleges that the third-party defendants possessed an ulterior motive, he has failed to allege that the suits were originally instituted in good faith, but then became perverted for some ulterior purpose. Therefore, because Morash could not have prevailed on count 2, it was properly dismissed.

## Conclusion

Accordingly, Morash's appeal from the dismissal of count 3 of the third-party complaint is sustained. Morash's appeal from the dismissal of counts 1 and 2 is denied and dismissed. The judgment of the Superior Court is affirmed in part and reversed in part. The papers in the case shall be returned to the Superior Court for further proceedings consistent with this opinion.

FLANDERS, Justice, concurring in part and dissenting in part.

After settling a lawsuit and other related disputes, can a party to the settlement maintain a third-party complaint against the other side's lawyers for supposedly fostering the litigation that settled? Answering this question in the negative, I respectfully disagree with that portion of the Court's opinion that allows the maintenance claim in the third-party complaint to survive the lawyers' dismissal motion. Although I join in the result reached in that portion of the Court's opinion upholding the Superior Court's dismissal of the other counts in the third-party complaint—including those alleging tortious interference with contract, malicious prosecution, and abuse of process—I also would affirm the Superior Court's dismissal of the maintenance count. In my judgment, allowing this claim to survive the dismissal motion will serve only to breathe new life into a largely vestigial maintenance cause of action that the modern legal world no longer recognizes in this context. Moreover, even if such a claim were still cognizable in some circumstances, the third-party complaint fails to allege an essential element of such a cause of action: namely, that the alleged tortfeasors were strangers to the dispute and to the parties who were involved in the underlying litigation. Finally, given the restrictions on the type of

claims that can be asserted as "third-party" claims, Morash's maintenance claim against Acebes' lawyers should have been dismissed in any event because it did not seek to hold Acebes' lawyers liable for the damages that Morash may have been responsible to pay to Acebes vis-à-vis Acebes' claims against him in the declaratory—judgment complaint.

The third-party plaintiffs, Hadbury, Inc. (Hadbury)[3] and Richard N. Morash (collectively, Morash), appeal from a Superior Court judgment dismissing their third-party complaint against the third-party defendants, attorneys Peter Olberg (Olberg), Eric Shaw (Shaw), and their New York-based law firm, Battle Fowler LLP (Battle Fowler) (collectively, the Acebes' or Battle–Fowler lawyers). The Acebes' lawyers represented the defendant, Carl Acebes and his corporation, Toste Farm Corporation (collectively, Acebes), in connection with their business dealings with Morash, including the negotiating, drafting, and implementing of a real-estate partnership agreement between Acebes and Morash. Morash contends that the motion justice erred in granting Acebes' lawyers' motion to dismiss Morash's complaint against them because the complaint stated viable claims that Acebes' lawyers advised, funded, and otherwise goaded their client, Acebes, into breaching his partnership agreement with Morash and into filing baseless lawsuits against him.

The underlying disputes in this case revolved around a real-estate partnership between Acebes, Morash, and their respective corporations. According to Morash, he and Acebes entered into an equal partnership to develop certain real estate, known as the Toste Farm property, a large tract of land that straddled the towns of Tiverton and Little Compton. Months earlier, Morash had entered into a purchase and sale agreement to acquire this property. In exchange for obtaining a 50 percent interest in the real-estate partnership that acquired the property, Acebes contributed $1,125,000 to the partnership. Attorneys Olberg and Shaw of the Battle Fowler law firm represented Acebes in negotiating the partnership agreement with Morash and his lawyers.

In the third-party complaint, Morash asserted that Acebes instructed his lawyer, Olberg, to prepare an agreement that would enable Acebes to wrest ownership and control of the Toste Farm property from Morash. But Morash and his counsel rejected the Olberg draft of the partnership agreement and threatened to close on the Toste Farm land purchase without Acebes. Eventually, however, the parties agreed on the terms of their partnership, reduced it to a written agreement, and acquired the property. According to Morash, Olberg negligently advised his client, Acebes, that Acebes still would be able to take control of the partnership from Morash by invoking the auction mechanism contained in the agreement. In September 1992, Morash alleged, Acebes attempted to do so, but failed at the auction because Acebes offered no money for Morash's partnership interest. Thereafter, extensive litigation ensued between Acebes and Morash.

According to Morash's complaint, Acebes' lawyers realized they had committed legal malpractice in advising Acebes concerning the partnership agreement and his rights and duties thereunder. Consequently, Morash alleged, Acebes' lawyers advised Acebes to pursue litigation against Morash over alleged "non-issues" in the hope that, by doing so, Acebes thereby would secure the Toste Farm property for himself, which in turn would allow Acebes'

3.  Hadbury, Inc. is a corporation controlled by  Richard N. Morash.

lawyers to avoid malpractice liability to him. The Acebes' lawyers also allegedly agreed to "hold Acebes harmless for costs and legal expenses incurred by Acebes" for the litigation that Acebes brought against Morash. The ultimate aim of Acebes' lawyers, according to Morash, was for Acebes' lawsuits to wear Morash down by attrition and thereby convince him to sell the Toste Farm property to Acebes for a song. As a result, so Morash claimed, Acebes would forget about suing his lawyers for malpractice.

Acebes' lawyers, who were not admitted to practice in Rhode Island, did not represent Acebes in his Rhode Island lawsuits against Morash. Other counsel, who were admitted in this jurisdiction, entered their appearance for Acebes and represented him in all the cases he filed in Rhode Island.[4] Acebes first filed an action in the Rhode Island Federal District Court, but this was dismissed on lack-of-diversity grounds. Acebes also filed a *lis pendens* against the Toste Farm property in the land records for Tiverton and Little Compton. He then filed a second action in the Federal District Court after he attempted to create diversity of citizenship by transferring assets of the Toste Farm Corporation to a New York corporation. But the Federal District Court also dismissed this second action because it rejected Acebes' belated attempt to create diversity via the asset transfer. Morash's third-party complaint against Acebes' lawyers asserted that, even though they were not his counsel of record in any of the Rhode Island lawsuits, Acebes relied on their advice in attempting to create diversity jurisdiction in federal court.

Thereafter, Acebes—still represented in court by the same Rhode Island counsel

4. Although the majority's opinion correctly notes that "the third-party defendants [Acebes' lawyers] are not the attorneys of record in this the instant case," the third-party complaint does not allege or otherwise indicate that Acebes' lawyers ceased to represent and advise him on these and other matters while this lawsuit was pending. The mere fact that Battle–Fowler lawyers did not enter their appearance as counsel for Acebes in this litigation does not mean that, as the majority contends, "no attorney client relationship exists between Acebes and the third-party defendants in the instant litigation." Although the complaint itself shows that Rhode Island counsel represented Acebes in this litigation, it does not follow that the Battle–Fowler lawyers no longer represented him merely because they did not appear on his behalf as his litigation counsel in this case. They very well could have continued to advise him about the lawsuit without entering their appearance. Indeed, the third-party complaint itself suggests that this is exactly what they did, because the complaint alleges "attorneys at Battle–Fowler colluded with Acebes to manufacture federal diversity through corporate merger," and when the First Circuit affirmed the U.S. District Court's ruling it left "Acebes and his New York attorneys to finally seek justice in this court after all." Moreover, the complaint alleges "throughout the ongoing litigation with Morash, Acebes has reiterated his reliance on the advice of his New York attorneys at Battle–Fowler for his execution of the agreement with Morash on November 4, 1991, for his actions and omissions at the auction of September 8, 1992, for his attempt to create diversity to have his lawsuit against Morash heard in our Federal District Court rather than this court, and for his arguments that, under the language of his agreement with Morash, Acebes is entitled to Morash's partnership interest for $0.00." Again, Morash in his brief asserts that "settlement conferences [in connection with the Rhode Island federal court litigation] were frustrated when Acebes had to advise the involved magistrate and judges that no settlement could be had without Battle–Fowler's signing off on it." In any event, even if there came a time when Acebes' lawyers no longer represented Acebes—albeit this fact does not appear in the third-party complaint—their intimate involvement as Acebes' lawyers in the events that form the subject matter of the third-party complaint is the critical fact in deciding whether the maintenance claim should be dismissed.

(but not by the Battle–Fowler lawyers)— filed this declaratory judgment action against Morash and Hadbury in Superior Court in 1996, to determine his rights and duties under the partnership agreement. Morash and Hadbury answered the complaint and later filed a third-party action against the Battle–Fowler lawyers. In the third-party complaint, Morash alleged, Acebes' lawyers committed tortious interference (count 1) by knowingly and willfully advising Acebes to follow an auction-bidding strategy that the partnership agreement did not allow; committed abuse of process and malicious prosecution (count 2) by advising Acebes to sue Morash as a means of circumventing their own malpractice liability; were liable to Morash for committing the tort of common-law maintenance (count 3) because of their actions in promising to indemnify Acebes for his expenses in connection with his Rhode Island litigation against Morash; were liable for slander of title (count 4) in connection with causing the filing of a *lis pendens* against the Toste Farm property; and were liable for equitable indemnity and contribution (count 5) to reimburse Morash for any and all losses suffered in his dealings with Acebes.[5]

In February 2000, Acebes and Morash settled all their differences, pursuant to which the Superior Court entered a settlement stipulation dismissing Acebes' declaratory-judgment action against Morash. As a result of the settlement, Morash agreed to reimburse Acebes for his initial partnership contribution of $1,125,000.

Also, they agreed that Acebes would no longer be part of the Toste Farm partnership. Before the dismissal of Acebes' Superior Court action against Morash, however, the court had stayed Morash's third-party complaint against Acebes' lawyers. But no sooner had the parties settled their differences, and dismissed the underlying claims and counterclaims between them, then these dormant third-party-complaint claims against Acebes' lawyers sprang back to life. In due course, asserting that Morash's third-party claims failed to state a claim on which relief could be granted, Acebes' lawyers moved to dismiss the third-party action against them under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure.

Ultimately concurring with the legal arguments of Acebes' lawyers, the Superior Court granted the lawyers' motion to dismiss. The motion justice stated that she knew of no cognizable legal theory under which the court could grant relief on the causes of action alleged against Acebes' lawyers in the third-party complaint. She also expressed concern that proceeding further on any of the counts in that complaint could "destroy the sanctity of attorney client privilege * * *."

Morash and Hadbury are here on their appeal from the judgment dismissing their complaint. They argue that the motion justice erred in dismissing their complaint because they possessed viable claims against Acebes' lawyers for their actions in supposedly advising their client to engage

---

5. In his appellate brief, Morash withdrew that portion of his appeal from the judgment which dismissed the count for slander of title (count 4). And he also failed to brief the Superior Court's dismissal of count 5 (indemnity and contribution) for this Court's review. Article I, Rule (16)(a) of the Supreme Court Rules of Appellate Procedure provides that, "[e]rrors not claimed, questions not raised and points not made ordinarily will be treated as waived and not be considered by the court." *See also Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1131 n. 1 (R.I.2002) (holding that the plaintiff's failure to present legal authorities and to argue an asserted error of the trial court in their legal brief on appeal constituted a waiver of that alleged error). Consequently, only the dismissal of counts 1, 2, and 3 are before this Court for review on appeal.

in conduct not allowed by the partnership agreement and for fostering baseless litigation against them. Morash and Hadbury also contend that Acebes' attorneys were not engaged in "honorable employment" in funding Acebes' litigation against them and, therefore, they can be held liable for their malicious and tortious acts against individuals and entities, such as themselves, who have been sued by their clients, even after they have settled all disputes with the lawyers' clients.

### Standard of Review

"When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the complaint, assume that all allegations in the complaint are true, and resolve any doubts in a plaintiff's favor." *Rhode Island Affiliate, American Civil Liberties Union, Inc. v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989). "The motion may then only be granted if it 'appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts * * *.'" *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I.2000) (quoting *Bernasconi*, 557 A.2d at 1232). "When this Court reviews a trial justice's granting of a Rule 12(b)(6) motion, [this Court] assume[s] that the allegations contained in the complaint are true, and examine[s] the facts in the light most favorable to the nonmoving party." *Id.* (citing *Bandoni v. State*, 715 A.2d 580, 582 n. 3 (R.I.1998)).

### Maintenance

The tort of maintenance will lie only against "those who have *no legal interest* in the subject matter of the dispute; those who have *no relation to either of the parties* to the dispute; and those who *are not acting in the lawful exercise of their pro-*

*fession* as counsel to one of the parties." *Hall v. Delaware*, 655 A.2d 827, 829 (Del.Super.Ct.1994). (Emphases added.) Acebes' lawyers argue that the Court properly dismissed Morash's maintenance claim because, far from qualifying as "strangers" to the legal actions filed by Acebes, they were his business lawyers and counselors who were intimately involved in advising their client how to deal with and resolve his disputes with Morash. As the complaint alleges, Acebes' lawyers not only assisted in drafting the partnership agreement that was the subject of both the federal and state court litigation, but also they advised their client how to respond to the various interpretative disputes that arose in connection with that agreement and its alleged breach. Nevertheless, Morash has accused Acebes' lawyers of committing the torts of maintenance, champerty, and barratry.[6] Morash complains that defendants "prompted" and "promised" to fund the litigation that Acebes filed against him, which Morash believes "constitutes actionable maintenance."

"Maintenance," however, constitutes "officious intermeddling in a suit *which in no way belongs to one,* by maintaining or assisting either party [to the action,] with money or otherwise to prosecute or defend it." *American Hotel Management Associates, Inc. v. Jones*, 768 F.2d 562, 570 (4th Cir.1985) (applying North Carolina law). *See also Schwartz v. Eliades*, 113 Nev. 586, 939 P.2d 1034, 1036 (1997); *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1211 (Okla.1996); *McKellips v. Mackintosh*, 475 N.W.2d 926, 928 (1991). By definition, a lawyer for a client involved in a lawsuit possesses a professional interest in how his

---

**6.** Although Morash's brief discusses champerty and barratry, these claims were not included in the complaint. Accordingly, Morash is barred from raising them for the first time on appeal. *See* n. 3, *supra.*

or her client fares in the lawsuit. *Hall,* 655 A.2d at 829. But for a plaintiff to state a cause of action for maintenance, the alleged intermeddler must be a stranger to the parties and their dispute. *Id.* Thus, "[when a] person promoting the suit of another has any interest whatever, legal or equitable, in the thing demanded, * * * he [or she] is in effect also a suitor according to the nature and extent of his [or her] interest." *Schwartz,* 939 P.2d at 1036.

Here, having drafted the partnership agreement that was at issue in that lawsuit and having served as Acebes' lawyers in connection with its interpretation, implementation, and alleged breach, Acebes' lawyers were scarcely strangers to the Acebes–Morash dispute or to the parties themselves. Moreover, according to Morash's own complaint, they advised their client, Acebes, to pursue litigation to resolve his disputes with Morash. Whether or not the Battle–Fowler attorneys were still serving as Acebes' litigation lawyers when he filed the lawsuit is immaterial. Because they still "had a legally cognizable interest in the subject matter of a suit, *prior to engaging in any conduct alleged to constitute * * * maintenance; [they] cannot be guilty of * * * maintenance with respect to such suit.*" 14 Am.Jur.2d, *Champerty, Maintenance and Barratry* § 2 at 718 (2000). (Emphasis added.) Thus, on this requisite element alone, Morash's claim for maintenance failed to pass legal muster because Acebes' lawyers possessed a legally cognizable interest in the litigation through their present or former representation of their client in connection with the underlying dispute. Thus, for this reason, Acebes' lawyers were not subject to a claim for unlawful maintenance of the litigation against Morash.

The majority suggests that if Morash can prove that Acebes' lawyers advised him to pursue this litigation to avoid their own liability for Acebes' malpractice claims against them, they would have been acting as a party, and not as his counsel, and that this type of arrangement constitutes the tort of maintenance. Yet, in *Jones,* 768 F.2d at 571, the Fourth Circuit held that no cause of action for maintenance arose when a corporate director encouraged a suit amongst certain shareholders of the corporation on whose board he served as a director, even though his purpose in doing so was to mitigate the effect of a potential judgment from another action. "[The director's] pre-existing interest in acquiring more * * * stock sufficiently distinguishes his conduct from the 'officious intermeddler' who walks in off the street simply to stir up strife and litigation. *He was no stranger to the parties or the dispute.*" *Id.* at 571. (Emphasis added.) Here also, as in *Jones,* Acebes' lawyers were no strangers to the parties or their dispute. Although their alleged motive in advising Acebes to litigate with Morash may have been self-serving—namely, to avoid a malpractice lawsuit from Acebes—that interest itself prevents them from satisfying the "strangers to the parties or the dispute" element of a maintenance claim. In short, because of their preexisting interest in the dispute and in advising their client with respect to same, the Battle–Fowler lawyers were not "officious intermeddlers." Thus, Morash cannot sue them for alleged maintenance.

Significantly, a number of jurisdictions no longer recognize claims for common-law maintenance, resorting instead to alternative measures, such as sanctions under the applicable rules of civil procedure or reliance on common-law claims for malicious prosecution and abuse of process to address improper lawsuits and pleadings. For example, the Supreme Court of New Hampshire, speaking in the earlier half of the last century, noted that the common-law tort of maintenance " 'is of merely

curious interest today'" because other types of actions and remedies now protect against the ills that this tort action formerly guarded against. *Markarian v. Bartis,* 89 N.H. 370, 199 A. 573, 576 (1938). This Court, in a context different from the case at bar, also has limited the applicability of the torts of champerty and maintenance. *See Mello v. General Insurance Company of America,* 525 A.2d 1304, 1306 (R.I.1987) (upholding assignment of an insured's bad-faith claim against an insurer despite common-law rule barring assignments of personal-injury claims because the evils of champerty and maintenance were completely absent).

In addition to New Hampshire, Connecticut, Idaho and Louisiana also no longer recognize common-law maintenance and champerty causes of action. *See Martin v. Morgan Drive Away, Inc.,* 665 F.2d 598 (5th Cir.) (stating Louisiana law), *cert. denied,* 458 U.S. 1122, 103 S.Ct. 5, 73 L.Ed.2d 1394 (1982); *Perry v. M.M. Puklin Co.,* 100 Conn. 104, 123 A. 28 (1923); *Merchants' Protective Ass'n v. Jacobsen,* 22 Idaho 636, 127 P. 315 (1912). Similarly, in New York, where Acebes' lawyers were admitted to practice law, there is now no recognition of a common-law claim for champerty, unless one has been provided for by statute. *Coopers & Lybrand v. Levitt,* 52 A.D.2d 493, 384 N.Y.S.2d 804, 807 (1976). The Hawaii Supreme Court in *Van Gieson v. Magoon,* 20 Haw. 146 (1910) held that an arrangement by which an attorney undertook to prosecute litigation and to pay costs for a share of the land that was the subject of the suit, was not invalid as constituting champerty or maintenance. The court believed that the social conditions that had given rise to the rules against champerty and maintenance no longer existed and that no extant public policy barred such agreements. *Id.* The

Supreme Court of New Jersey in *Lloyd W. Cosner, Inc. v. Hartshorne, Inc.,* 13 N.J. Misc. 295, 177 A. 890, 891 (1935)—a case where an attorney agreed to pay costs and disbursements for an appeal on behalf of a client—held that the "doctrine of maintenance does not prevail in this state, and that, as a consequence, a contract may not be voided on that ground."

Most recently, the Supreme Judicial Court of Massachusetts held that claims for the alleged torts of champerty, barratry, and maintenance were no longer cognizable in that jurisdiction. *Saladini v. Righellis,* 426 Mass. 231, 687 N.E.2d 1224 (1997). In *Saladini,* a financier agreed to provide money for Righellis to pursue a legal claim arising out of his interest in real property. Righellis settled and received $130,000, but never notified Saladini. Upon discovery of the settlement, Saladini immediately filed suit. The lower court dismissed the complaint as "against public policy," but on appeal the Supreme Judicial Court found in the plaintiff's favor. The court noted that common-law maintenance is no longer a viable cause of action in Massachusetts because there are other, more modern ways to limit frivolous lawsuits. *Id.* at 1226–27. When faced with a litigation-financing agreement between a litigant and a financing agent, the court will ascertain whether the arrangement is reasonable to guard against "impermissible overreaching by the financier." *Id.* at 1227.

Even the modern rules of professional responsibility for attorneys—including this Court's own rules—now allow attorneys to represent their clients on a contingent-fee basis and to pay for their clients' litigation expenses without obtaining any promise of repayment from clients who do not prevail in the underlying litigation.[7] Thus, Article

---

**7.** The following states allow such arrangements: Alaska, Arkansas, Connecticut, Dela-

V, Rule 1.8 of the Supreme Court Rules of Professional Conduct, modeled after the American Bar Association's Model Rules of Professional Conduct, state in pertinent part:

> "(e) A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) *a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter* * * *." (Emphasis added.)

The "expenses of litigation" can include the cost of hiring litigation counsel in another jurisdiction to represent the client in lawsuits that the client files there. And the applicable rules contain no requirement that, to advance their client's "costs and expenses of litigation" the client's lawyers must enter their appearance and serve as counsel of record in the litigation itself. Because modern professional-conduct rules not only allow for contingency fees but also permit lawyers to pay for their client's litigation expenses without obtaining any promise of repayment—including attorneys' fees for local litigation counsel to represent the client in a foreign jurisdiction—even in jurisdictions where maintenance is a viable claim it is hard to imagine how a non-client could state sufficient facts to support a maintenance claim against an attorney who has an interest in vindicating the legal rights of his client through the litigation in question. Therefore, when reviewing this complaint in light of the applicable ethical rules governing attorneys' conduct and the nationwide trend toward abandoning the tort of common-law maintenance, Acebes' lawyers here would have been perfectly justified in promising to pay for their clients' litigation expenses, including the attorneys' fees of Acebes' Rhode Island litigation counsel, without entering their appearance in the Rhode Island litigation and without obtaining any promise of repayment from Acebes—even if their ultimate repayment had been contingent on a successful monetary outcome in Acebes' litigation with Morash.

In any event, without regard to whether a maintenance claim might or might not be cognizable in other circumstances, I would hold that an action for maintenance does not lie in this case because Acebes' lawyers were hardly strangers to the litigation between Morash and Acebes. On the contrary, they possessed a lawful relation to the case via their attorney-client relationship with Acebes during the dispute that gave rise to the litigation. As Acebes' lawyers, they were involved in providing legal advice to their client about the partnership agreement and about his underlying disputes with Morash. Under no circumstances can Acebes' lawyers be characterized as "officious intermeddlers" who possessed no relation to the parties involved in the underlying partnership-agreement dispute or to the litigation that ensued between them. And the lawyers' alleged promise to pay for their client's litigation expenses of the lawsuit did not constitute maintenance because lawyers are allowed by the applicable professional rules to pay such expenses for their clients without receiving any promise of repayment and irrespective of whether they enter their appearance as litigation counsel for the client in the underlying litigation.

ware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, Nevada, New Hampshire, New Jersey, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Utah, Vermont, West Virginia, Wisconsin, Wyoming. *See* Rudy Santore, Alan D. Viard, *Legal Fee Restrictions, Moral Hazard, and Attorney Rents,* 44 J.L. & Econ. 549, 570–71 (2001).

Furthermore, I do not believe that Morash, as a third-party plaintiff, should be allowed to assert claims for damages against a third-party defendant that are "in excess of, or different from, the damages sought by the plaintiff [Acebes] from the defendant [Morash]."[8] Third-party claims filed under Rule 14 of the Superior Court Rules of Civil Procedure, entitled "Third party practice," are limited

> "to allowing a defendant to seek to recover against a third-party defendant only in circumstances when the third-party defendant may be liable to the defendant for all or part of the plaintiff's claim against the defendant. In sum, we believe that Rule 14 allows a defendant to bring in a third-party for contribution and/or indemnification." *Consentino v. Blackman,* 651 A.2d 1227, 1227 (R.I.1994) (mem.).

Thus, a defendant cannot use a third-party complaint under Rule 14 to assert an independent claim against a third-party defendant—even though it arises out of the same facts as the main claim; rather, third-party claims are restricted to be "an attempt to pass on to the third party all or part of the liability asserted against the defendant." 3 *Moore's Federal Practice* § 14.04[3][a] at 14–20 (Matthew Bender 3d ed.). Rule 14(a) of the Federal Rules of Civil Procedure states that a third-party plaintiff may implead a third-party defendant who may be liable to the third-party plaintiff "for all or part of the plaintiff's claim" against that party. Courts have relied on this requirement to limit third-party complaints only to secondary-liability claims, in which the third-party defendant may be liable in whole or in part for the damages that plaintiff seeks to recover from the defendant/third-party plaintiff. *See Stewart v. American International Oil & Gas Co.,* 845 F.2d 196, 200 (9th Cir.1988) (court did not err in dismissing third-party complaint where there was no derivative or secondary liability alleged in the complaint); *U.S. General, Inc. v. City of Joliet,* 598 F.2d 1050, 1053 (7th Cir.1979) ("plain condition on the face of [Fed.R.Civ.P.] 14" was not met where "there was no claim that any one of the additional parties would be secondarily liable"); *Gabbidon v. King,* 414 Mass. 685, 610 N.E.2d 321, 322 (1993) (a third-party claim "is intended to be used in situations of indemnity or possible contribution"); *Danks v. Holland,* 246 N.W.2d 86, 89 (N.D.1976) (court properly dismissed third-party complaint where the claim was totally unrelated and not derivative from, or dependent on the main action).

Although some jurisdictions have held that the permissive-joinder rule may be used to join any other claims and parties to the third-party complaint, the better rule is that "the defendant cannot use the permissive party joinder rule to join claims against a third party unless it has properly impleaded that third party." *Moore's Federal Practice* § 14.04[3][c] at 14–25. In the original complaint, Acebes sought a declaration of his rights under the partnership agreement, reformation of the agreement, as well as reimbursement for the $1,125,000 he contributed to the partnership. Although Morash included a claim for equitable indemnity in the third-party complaint against Acebes' lawyers, the court below dismissed that claim and Morash has not challenged this dismissal on appeal. Thus, because Morash has not alleged that Acebes' attorneys were only

---

**8.** *See* Annot. Jean F. Rydstrom, LL.B., *Right of Defendant under Rules 14(a) and 18(a) of Federal Rules of Civil Procedure to Assert against Third Party Properly in Case, Claim for Damages in Excess of, or Different from, those Sought by Original Plaintiff,* 12 A.L.R. Fed. 877 (1972).

secondarily liable to him for the $1,125,000 that Acebes sought to have Morash return to him, Morash's maintenance cause of action fails to state a proper third-party claim against Acebes' lawyers. Therefore, even the permissive-joinder rule would not permit Morash's maintenance claim to survive a dismissal motion. Having failed to assert the third-party defendants' derivative liability to Morash for Acebes' claims against Morash, Morash should not be allowed to proceed on an independent maintenance claim in a third-party complaint against Acebes' lawyers.

For the above reasons, I respectfully disagree with the majority's decision to reverse the motion justice's dismissal of the maintenance claim, and I would affirm the Superior Court's judgment in all respects. But I also concur with the majority's affirmance of the Superior Court's dismissal of the other claims in the third-party complaint.