DECISION
Before this Court is the motion of Defendant McLaughlin Moran, Inc. (Moran), pursuant to Super. R. Civ. P. Rule 12(b)(6), to dismiss Counts X and XII of the Plaintiff's[1] complaint for failure to state a claim upon which relief may be granted. Plaintiff alleges that Moran tortiously interfered with its contract for the exclusive distribution of the Bass Ale brand of beer in Rhode Island. The Plaintiff seeks compensatory damages, as well as declaratory and injunctive relief, based upon the effect of its distribution contract and the Beer Industry Fair Dealing Law (BIFDL). G.L. 1956 § 3-13-1(7).
 I Facts and Travel
Plaintiff C C Distributors, Inc. (CC) is a wholesaler of beer and other alcoholic beverages in Rhode Island, and sells such products to various retail outlets in the state. CC was formerly the exclusive Rhode Island wholesaler of the Bass Ale brand of beer under an agreement with Defendant InBev U.S.A., LLC (InBev USA). *Page 2 
InBev USA had imported Bass Ale into the United States under an agreement with Defendant InBev nv/sa (InBev Europe), a Belgian manufacturer and the parent corporation of InBev USA. (First Am. Compl. ¶ 6.) CC claims that it has invested substantial amounts of time and money into promoting and selling the Bass Ale brand, and has realized hundreds of thousands of dollars in profits from that brand.Id. ¶¶ 32-37.
CC alleges that on or about November 2006, InBev Europe entered into one or more agreements with InBev USA and Anheuser Busch, Inc. (A-B) which had the effect of terminating InBev USA's right to import Bass Ale and other brands. (First Am. Compl. ¶¶ 48-54.) Therefore, InBev USA ceased supplying the brand to CC. Id. ¶ 62. InBev Europe then granted the import rights to A-B, which now intends to distribute Bass Ale in Rhode Island through Moran, a wholesaler in competition with CC.[2] See id. ¶¶ 45-50. Moran is part of A-B's United States wholesale distribution network and sells only A-B products in Rhode Island. Id. ¶ 46.
CC's First Amended Complaint contains fourteen counts and seeks various forms of relief against Moran, A-B, InBev USA, and InBev Europe. The only two counts which arguably are related to Moran are: Count X, which seeks a declaratory judgment against all Defendants related to the termination of CC's ability to sell Bass Ale; and Count XII, which is a claim for tortious interference with contractual relations against Moran and A-B. Moran seeks the dismissal of both claims against it, and the Plaintiff has objected to the motion. *Page 3 
 II Standard of Review
The role of a Rule 12(b)(6) motion to dismiss for failure to state a claim is merely to test the sufficiency of the complaint. Toste FarmCorp. v. Hadbury, Inc., 798 A.2d 901, 905 (R.I. 2002). The Court must ascertain whether, if the allegations of the complaint are true, the Plaintiff would be entitled to the requested relief, resolving any factual doubts in favor of the Plaintiff at this stage. Bruno v.Criterion Holdings, Inc., 736 A.2d 99 (R.I. 1999). The complaint must give fair and adequate notice of the plaintiff's claim, but in most cases it need not contain a high degree of factual specificity.See, e.g., Hyatt v. Village House Convalescent Home, Inc., 880 A.2d 821,824 (R.I. 2005) (per curiam). Therefore, in order to grant the motion, it must be clear beyond a reasonable doubt that the Plaintiff would not be entitled to relief under any set of facts which might be proved in support of its claim as articulated in the complaint. See id.
 III Analysis
The purposes of the BIFDL are, inter alia, to
 "protect wholesalers['] substantial initial and continuing investments of money, time and effort in their distributorships and to stimulate greater investment of those resources in these small businesses by assuring their continuation on a fair, equitable and nondiscriminatory basis. . . ." Section 3-13-2(b)(2).
In pursuit of this goal, the BIFDL provides that neither a supplier[3]
nor a wholesaler[4] may terminate an agreement unless there is good cause, notice has been given to the other *Page 4 
party stating reasons for the termination, and the grounds for termination have not been corrected. See § 3-13-4; see also §3-13-1(1) (defining agreement as "any contract, agreement, or arrangement . . . between a supplier and a wholesaler pursuant to which a wholesaler has the right to purchase, resell, and distribute any or all brands of malt beverages offered by the supplier").
CC argues that the purported termination of InBev USA's import rights was merely a scheme to avoid the effect of the BIFDL, and this contention forms the basis of its claims against A-B, InBev USA, and InBev Europe. Similar claims have been brought in other states with statutes similar to the BIFDL. The Court will assume, for purposes of the present motion, that these Defendants have breached CC's contract and the BIFDL by failing to distribute Bass Ale through CC.[5]
CC further claims that Moran "has accepted or intends to accept an appointment from A-B to distribute . . . the Bass Ale Brand in Rhode Island which interferes with . . . CC's contractual rights to exclusively distribute" Bass Ale in Rhode Island. (First Am. Compl. ¶ 168.) Therefore, it seeks in Count XII damages and injunctive relief against Moran for the alleged interference with its contractual relations. It also seeks in Count X a declaration that "A-B may not transfer or assign to Moran the distribution rights" that CC had under its agreement with InBev USA. (First Am. Compl. ¶ 156.) *Page 5 
 A. Count XII — Tortious Interference with Contractual Relations
The "basic elements" of a tortious interference claim are "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom." Jolicoeur Furniture Co. v. Baldelli, 653 A.2d 740, 752 (R.I. 1995); see also Restatement (Second) of Torts §§ 766 (stating that "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability. . ."); id. § 767 (stating factors which make interference improper). If the Plaintiffs are successful at demonstrating all of these elements, they will have made a prima facie case, and the burden then shifts to the Defendants to demonstrate an adequate justification for any interference. Toste Farm Corp. v.Hadbury, Inc., 798 A.2d 901, 906 (R.I. 2002); UST Corp. v. General Rd.Trucking Corp., 783 A.2d 931, 937 (R.I. 2001).
The parties dispute whether CC has properly alleged the interference element.[6] Interference may arise in many forms. See Restatement (Second) of Torts § 766, com. k (stating that there is no "technical requirement as to the kind of conduct that may result in interference"). Interference is most commonly found where a defendant has induced a party to breach its contract, but inducement need not be present.See id. (noting that interference may also occur by physical restraints, deprivation of the means of performance, or by misdirecting a party's performance). The important factor is that the alleged acts of interference actually be a cause of the harm to the plaintiff.See, e.g., Toste Farm Corp., 798 A.2d at 906 (referring to "damages resulting therefrom," i.e., from *Page 6 
the acts of interference); Restatement (Second) § 766 (referring to "inducing or otherwise causing" a person not to perform its contract).[7]
Under the BIFDL as well as CC's contract, the distribution rights to any particular brand are exclusive. See § 3-13-9; First Am. Compl. ¶ 29-31. Therefore, CC and Moran cannot both distribute Bass Ale. A fair reading of the complaint's allegations is that one or all of InBev Europe, InBev USA, and A-B is contractually obligated to provide Bass Ale to CC, the BIFDL prevents them from unilaterally terminating the distributorship contract, and therefore they have breached the contract by failing to deliver the brand to CC. As to Moran, however, CC alleges only that:
 "66. A-B has informed CC that it intends to assign the Bass Ale Brand distribution rights to defendant, Moran.
 . . . .
 168. Moran . . . has accepted or intends to accept an appointment from A-B to distribute . . . the Bass Ale Brand in Rhode Island which interferes with . . . CC's contractual rights to exclusively distribute. . . .
 . . . .
 170. . . . Moran's acceptance of the InBev USA distribution rights . . . is intentional interference with a contractual relationship. . . ." (First Am. Compl. ¶¶ 66, 168, 170.)
Thus, the question is whether Moran's acceptance of the distribution rights from A-B may constitute interference with CC's contract under any set of facts which may be proved under the complaint. *Page 7 
Moran relies on various authorities which establish that a person "does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." Restatement (Second) of Torts § 766, com. n. In order to constitute interference, a defendant's conduct
 "must have played an active and substantial part in the loss. It is not enough that he merely has reaped the advantages of a broken contract after the contracting party has withdrawn from it of his own motion. Thus acceptance of an offered bargain is not itself inducement of the breach of a prior inconsistent contract. . . ." Prosser and Keaton, The Law of Torts § 129 at 989-90 (5th ed. 1984, student ed.) (Prosser on Torts).
CC responds that it is not necessary to allege inducement in order to state a claim for tortious interference and, therefore, that its allegations of "acceptance" are sufficient.
The Court finds that Moran has the better of this argument. The complaint, as presently drafted, states only that Moran has "accepted" the distribution rights, essentially becoming the beneficiary of a new agreement — not that it played a role in terminating CC's former agreement. Any damages to CC flowed from the alleged breach. Even if the other Defendants breached CC's contract in violation of the BIFDL, there is no allegation that such a breach was caused by Moran's actions. Therefore, "acceptance" was not an act of interference upon which CC's claim may rest.
CC is only partially correct when it argues that is not necessary to allege inducement in order to maintain its tortious interference claim. It is true that inducement itself is not a necessary element.See Restatement (Second) of Torts § 766, com. k (quoted above). However, CC needs to allege some act of interference on the part of Moran — if it has a good faith basis for doing so — which has a causal relationship to the *Page 8 
alleged breach of the distributorship contract. That conduct may include inducement, or it may be some other type of conduct which prevented performance of the contract. Without more, the mere "acceptance" of a subsequent contract is insufficient to establish interference, and without establishing the interference element, CC cannot prevail on its claim. Therefore, the Court must grant the motion to dismiss Count XII.[8] Of course, that dismissal is without prejudice to the filing of an amended complaint which contains sufficient allegations.
 B. Count X — Declaratory Judgment
Moran's motion to dismiss it as a Defendant with respect to Count X is an unusual one. Moran's initial motion claimed that Count XII — intentional interference with contractual relations — was the only claim applicable to it. Because it took the position that Count XII failed to state a claim, Moran no longer desired to participate in the litigation of this case. CC then responded by pointing out that Count X sought a declaratory judgment that would necessarily affect Moran's interests.See, e.g., First Am. Compl. ¶ 156 (requesting a declaration that "A-B may not transfer or assign to Moran the distribution rights" for Bass Ale).[9] Indeed, CC has sought declaratory and injunctive relief against the other Defendants which, if granted, would necessarily prohibit them from providing Bass Ale to Moran. If the brand is as profitable as CC alleges, then Moran appears to have a substantial interest in retaining the distribution rights. *Page 9 
Therefore, it is somewhat unusual that Moran would so arduously seek to be dismissed as a party at this stage in the litigation.
Moran argues that even if CC prevails, the Court can afford complete relief to CC through injunctive relief against A-B. By enjoining A-B from distributing to Moran, and otherwise effectuating the distribution of Bass Ale through CC, CC will have achieved its goals without the need for any further relief against Moran. This may ultimately turn out to be true. However, the Court is not prepared to conclude, at this stage, that no relief shall enter against Moran on Count X.
First, even if the Court declines to enjoin Moran's conduct, an injunction against A-B will necessarily impair Moran's interests by prohibiting it from receiving Bass Ale from A-B. Moreover, if CC successfully obtains declarations that InBev Europe, InBev USA, and A-B must distribute Bass Ale through CC, the requested declaration will necessarily adjudicate Moran's rights because those distribution rights would be exclusive. Moran has been brought before this Court for the purpose of adjudicating its rights, pursuant to the Uniform Declaratory Judgments Act, as requested under Count X. If CC eventually proves entitlement to such a declaration, the Court will grant that relief.
By obtaining a dismissal, Moran would give up its ability to conduct discovery, file briefs, and otherwise affect the course of this litigation. It may even be waiving its rights to appeal any adverse outcome. Under these circumstances, if Moran was not a party in this litigation, this Court would likely have to take steps to make Moran a party in order that its rights would be protected. See G.L. 1956 §9-30-7 (requiring that all persons who have a claim or interest that may be affected by the requested declaration be *Page 10 
made a party, and stating that no declaration may affect a non-party); Super R. Civ. P. Rule 19(a)(2)(i) (requiring the joinder of persons who have an interest in the action which may be impaired in that party's absence). While it is probable that A-B and its counsel will adequately defend against Plaintiff's efforts to prevent the distribution of Bass Ale to Moran, the Court remains somewhat puzzled by Moran's request. In any event, because the Court is not prepared to conclude at this stage that no possible relief will enter against Moran, the Court will not dismiss Count X as it pertains to Moran.
 IV Conclusion
After due consideration of the arguments advanced by counsel at oral argument and in their memoranda, the Court grants Moran's motion to dismiss pursuant to Super. R. Civ. P. Rule 12(b)(6) as to Count XII without prejudice. The Court denies the motion with respect to Count X. Counsel for Moran may present an order consistent herewith which shall be settled after due notice to counsel of record.
[1] The only remaining Plaintiff in this case is CC Distributors, Inc. The other Plaintiffs have settled their claims.
[2] Pursuant to an agreement among the parties, A-B is currently providing the Bass Ale brand to both CC and Moran pending a final resolution of this lawsuit.
[3] Supplier means "any person engaged in business as a brewer, manufacturer, importer, master wholesaler, broker, or agent of malt beverages which enters into an agreement with any wholesaler in this state to distribute any or all of its brands of malt beverages, and any successor-in-interest to that entity with respect to the agreement. . . ." Section 3-13-1(5).
[4] Wholesaler means "any person licensed to import or cause to be imported into this state, or to purchase or to be purchased in this state, malt beverages for resale or distribution to retailers licensed in this state, and any successor-in-interest to that entity." Section3-13-1(8).
[5] Although its distributorship contract was with InBev USA, CC is attempting to impute those contractual obligations to InBev Europe and A-B under theories which include piercing the corporate veil and/or successor liability. Whether CC is entitled to relief is still an undecided question. The Court addressed those issues in its decision on the Plaintiffs' motion for a temporary restraining order. CopleyDistribs., Inc. v. Anheuser-Busch, Inc., C.A. No. 07-0703, 2007 R.I. Super. LEXIS 28 (R.I.Super.Ct. Feb. 13, 2007).
[6] CC has properly alleged that a contract existed for the distribution of Bass Ale, that Moran knew of that contract, and that CC suffered harm from its termination. (First Am. Compl. ¶¶ 165, 166, 169.)
[7] In this case, the acts of interference allegedly resulted in a breach of contract. However, the interference does not necessarily have to lead to a breach in order to be actionable. See Smith Dev. Corp. v.Bilow Enters., 112 R.I. 203, 212, 308 A.2d 477, 482 (R.I. 1973) (noting that interference need not result in a breach of contract, but rather, "any act . . . which retards, makes more difficult, or prevents performance, or makes performance of a contract of less value to the promisee" may fall within the scope of this tort) (quotations omitted).
[8] Because the Court finds no allegation of interference, the Court is unable to address whether any acts of interference would be justified.
[9] The actual wording of paragraph 156 refers only to the "Premium European Brands" that were the subject of claims by other Plaintiffs which have been settled. (First Am. Compl. ¶ 17). However, it is clear that CC also seeks a similar declaration with respect to Bass Ale, and that reference to Bass Ale has been inadvertently omitted. *Page 1